## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ABBOTT POINT OF CARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Civil Action No. CV-08-S-543-NE** |
| | ) | |
| EPOCAL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Abbott Point of Care, Inc. ("Abbott"), asserts four claims of patent infringement against defendant, Epocal, Inc. ("Epocal"). Plaintiff also asserts a supplemental state law claim for tortious interference with contract.[1] The case presently is before the court on Epocal's motion to dismiss plaintiff's tortious interference claim (Count V of plaintiff's complaint), pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19, for failure to join indispensable parties.[2]

### I. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

Plaintiff asserts the following allegations in support of its claim against Epocal for tortious interference with a contract:

---

[1]*See* doc. no. 1 (Complaint).

[2]Doc. no. 7.

14.    [Imants R.] Lauks, an inventor and assignor of the foregoing '455, '664, '824, and '416 patents, is a former employee of i-STAT Corporation, the predecessor to Abbott, which is a wholly-owned subsidiary of Abbott Laboratories.  Upon information and belief, Lauks founded Epocal by March 2001.

15.    Abbott and Epocal are competitors in the specialized and technical business of development, manufacture, and sale of health care products, including patient-side blood testing systems.

16.    Abbott relies on its employees to develop, improve upon, and sell its health care products.

17.    Abbott expends a large amount of time and resources to develop, train and retain its employees.

18.    Abbott employees have access to Abbott's highly confidential and proprietary information, including trade secrets ("Abbott's Confidential Information").

19.    Because Abbott employees have access to Abbott's Confidential Information, Abbott requires that certain employees agree to and sign a Confidentiality and Non-Compete Agreement (the "Confidentiality Agreement") in exchange for employment or continued employment.  In relevant part, the Confidentiality Agreement prohibits Abbott employees from (a) disclosing Abbott's Confidential Information; and (b) competing with Abbott for a reasonable time after the employment relationship is terminated.   Abbott employees also sign an Employment Agreement (the "Employment Agreement") which includes similar restrictions on improper disclosure and competition.  The restrictions contained in the Confidentiality Agreement and Employment Agreement are reasonable in both duration and scope.

20.    Upon information and belief, and as further set forth below, Epocal has tortiously interfered with the Confidentiality and Employment Agreements by encouraging or inducing Abbott's former employees to improperly disclose Abbott's Confidential Information or to improperly compete against Abbott.

. . . .

62.     The Confidentiality and Employment Agreements entered into between Abbott and its employees are valid, reasonable, and supported by good and valuable consideration.

63.     Upon information and belief, Epocal had knowledge that certain Abbott employees entered into Confidentiality and Employment Agreements with Abbott.  Upon information and belief, Epocal also had knowledge that the Confidentiality and Employment Agreements prohibited Abbott employees from, among other things (a) disclosing Abbott's Confidential Information; and (b) competing with Abbott for a reasonable time after ceasing employment with Abbott.

64.     Upon information and belief, Epocal intentionally and knowingly solicited Abbott employees to terminate their employment with Abbott, and to begin working for Epocal.  As a result of Epocal's solicitations, certain Abbott employees resigned from Abbott, and then began working at Epocal.

65.     Upon information and belief, Abbott's former employees perform similar work for Epocal as they did for Abbott.

66.     Upon information and belief, Epocal has encouraged or induced former Abbott employees to breach their Confidentiality Agreement and/or Employment Agreement with Abbott, either by improperly disclosing Abbott's Confidential Information or by improperly competing against Abbott.

67.     Abbott has suffered and will continue to suffer damages and irreparable injury as a direct result of Epocal's intentional interference with the Confidentiality and/or Employment Agreement entered into between Abbott and its former employees.

68.     Epocal's conduct was intentional, willful, wanton, and/or undertaken with malice toward Abbott, entitling Abbott to an award of

punitive damages.[3]

As a remedy for Epocal's alleged tortious interference with its contracts, plaintiff requests the court to:

> D.    Enter judgment that defendant Epocal has intentionally interfered with Abbott's contracts;
>
> . . . .
>
> F.    Enter a permanent injunction restraining and enjoining defendant Epocal and its respective officers, agents, servants, *employees*, attorneys, and those persons in active concert or participation with defendant Epocal who receive actual notice of the order by personal service or otherwise, from any further interference with Abbott's contracts with its former employees;
>
> . . . .
>
> H.    [Award] compensatory damages to compensate Abbott for defendant Epocal's intentional interference with Abbott's contracts with its former employees;
>
> I.    [Award] punitive damages based on Epocal's intentional, willful and wanton interference with Abbott's contracts; [and]
>
> . . . .
>
> M.    Grant to Abbott such other and further relief as the Court may deem just, proper, and equitable under the circumstances.[4]

## II. DISCUSSION

---

[3]Complaint, at ¶¶ 14-20, 62-68.

[4]Complaint, p.p. 14-15 (Prayer for Relief), at ¶¶ D, F, H, I, M (emphasis supplied). The other requests in plaintiff's prayer for relief relate to plaintiff's patent infringement claims, which are not addressed in this opinion.

Epocal asserts that the former Abbott employees who allegedly were induced by Epocal to violate the Confidentiality Agreements and/or Employment Agreements they had entered into with Abbott are necessary and indispensable parties to Abbott's claim for tortious interference.  Epocal thus argues that the tortious interference claim against it must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19.

Federal Rule of Civil Procedure 12(b)(7) allows a defendant to move for dismissal of a claim for "failure to join a party under Rule 19."  Fed. R. Civ. P. 12(b)(7).  Rule 19 states, in pertinent part, that

> [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) *that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may*:
>
>> (i) *as a practical matter impair or impede the person's ability to protect the interest*; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1) (emphasis supplied).

If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.  The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b).

The Eleventh Circuit has interpreted Rule 19 as stating

a two-part test for determining whether a party is indispensable.  First, the court must ascertain under the standards of Rule 19(a) whether the person in question is one who should be joined if feasible.  If the person should be joined but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Focus on the Family v. Pinellas Suncoast Transit Authority,* 344 F.3d 1263, 1279-80

(11th Cir. 2003) (quoting *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.,* 669 F.2d 667, 669 (11th Cir. 1982)).  In determining whether a party *should* be joined if feasible, "pragmatic concerns, especially the effect on the parties and the litigation, control." *Challenge Homes,* 669 F.2d at 669 (citations and internal quotation marks omitted).  The moving party has the burden to establish that an absent party is necessary and indispensable. *Ship Construction & Funding Services (USA), Inc. v. Star Cruises PLC,* 174 F. Supp. 2d 1320, 1325 (S.D. Fla. 2001).

Epocal argues that the former Abbott employees are necessary parties (*i.e.,* parties who should be joined if feasible) because they have interests in the subject matter of this action, and because their ability to protect those interests would, as a practical matter, be impaired or impeded if the case is disposed of without their participation. *See* Fed. R. Civ. P. 19(a)(1)(B)(I).  Specifically, Epocal asserts that "Abbott's tortious interference claim . . . depends upon a finding of both the enforceability and the breach of the Agreements between Abbott and its alleged (though unidentified) former employees," and that the former Abbott employees must be joined because their rights under the Agreements will be affected by the suit.[5] Further, because Abbott is seeking an injunction to prevent any further violation of the of the non-compete agreements, the employees' current jobs with Epocal could

___
[5]Doc. no. 7, at ¶¶ 5-6.

be in jeopardy.

No Eleventh Circuit case has squarely addressed this issue, in the context of

a tortious interference claim.[6]  Other courts and commentators addressing the issue

have held that, in a claim for tortious interference, it is *not* necessary to join the

contracting party whose contract or employment relationship is being interfered with,

as long as the allegedly interfering party is participating in the lawsuit.  *See generally*

7 Wright, Miller & Kane, *Federal Practice and Procedure:  Civil 3d* § 1613 (1998)

("[I]n an action to enjoin interference with a contract, the party prevented from

performing the agreement need not be joined since that party's interests are not

directly at stake and effective relief can be awarded without him.  However, the party

accused of interfering with the contract must be joined since the presence of the

interfering party normally is essential to halting the offending conduct.") (footnotes

omitted).  In *Arkansas v. Texas,* 346 U.S. 368 (1953), the Supreme Court considered

the following situation:

> [T]he University of Arkansas, acting through its Board of Trustees, and

---

[6]Epocal cites several cases to support the allegedly "well-established [principle] that a party to a contract, whose rights under the contract would be affected by the suit, is an indispensable party to a claim involving that contract."  Doc. no. 7, at ¶ 6.  These cases are distinguishable because they all concern contract disputes, not tortious interference claims.  *See B. Hernandez & Hnos, Inc. v. Kellogg USA, Inc.,* 440 F.3d 541, 548 (1st Cir. 2006); *Master Card Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F. 3d 377, 386 (2nd Cir. 2006); *Travelers Indem. Co. v. Household Intern., Inc.,* 775 F. Supp. 518, 527 (D. Conn. 1991); *CP Solutions PTE, Ltd. v. Gen Elec. Co.,* 244 F.R.D. 137, 143 (D. Conn. 2007); *Ragan Henry Broadcast Group, Inc. v. Hughes,* No. 91-CV-6157, 1992 WL 151308 (Ed. Pa. June 19, 1992).

the William Buchanan Foundation, a corporation organized under the laws of Texas, entered into a contract whereby the Foundation agreed to contribute a sum of $500,000 to the construction of a one-hundred bed pediatric floor in a new hospital in the Arkansas State Medical Center. The allegations [of Arkansas' complaint] are that, though the University of Arkansas and the Foundation are ready, willing, and able to perform, the state of Texas, acting through her Attorney General, has filed suit in the Texas courts to enjoin the Foundation from performing the contract on the grounds that under Texas law the trust funds of the Foundation must be expended for the benefit of Texas residents.  The complaint further alleges that the University of Arkansas is an official instrumentality of Arkansas, that in reliance on the agreement with the Foundation it let contracts for the construction of the hospital, proceeded with construction to the sixth floor, and is without funds to proceed further unless Texas is enjoined from interference with contract.

*Id.* at 369.  Texas argued that the Foundation was an indispensable party to the suit, but the Supreme Court held otherwise, emphasizing that "the controversy is between Arkansas and Texas — the issue being whether Texas is interfering unlawfully with Arkansas' contract [with the Foundation]."  *Id.* at 370.[7]

The Seventh Circuit has noted that the principles governing indispensable parties in tortious interference cases are "closely related" to the principles governing the joint and several liability of joint tortfeasors.  *Salton, Inc. v. Philips Domestic Appliances and Personal Care B.V.,* 391 F.3d 871, 830 (7th Cir. 2004).

Under the principle of joint and several liability, . . . the victim of a tort is entitled to sue any of the joint tortfeasors and recover his entire

---

[7]*Arkansas v. Texas* has not often been cited for this principle, despite the fact that the decision is more than fifty years old.  Even so, it is binding Supreme Court authority and cannot be ignored by this court.

> damages from that tortfeasor.  The defendant may have a right to
> contribution. . . from the other tortfeasors, but the victim is not required
> to sue more than one of his oppressors.  A rule automatically deeming
> joint tortfeasors indispensable parties to suits against each of them
> would be inconsistent with this common law principle and is therefore
> rejected.

*Id.* at 877 (citations omitted).  Similarly, in a case for tortious interference with a

contract, "there is no rule that you cannot sue the interferer without also suing the

party to your contract whom the defendant inveigled into breaking the contract." *Id.*

at 880 (citing *Arkansas v. Texas,* 346 U.S. at 369-70) (other citations omitted).  That

principle applies even if one party to the contract that allegedly had been interfered

with — the alleged "indispensable party" — would likely suffer economic harm if the

case proceeded without it.  *Salton,* 391 F.3d at 879-80.[8]

This court finds the reasoning of the Seventh Circuit in *Salton* to be persuasive.

Based on that case, and the other authorities cited above, the court concludes that,

while the former Abbott employees may have *some* interest in the outcome of this

---

[8]The Seventh Circuit's decision in *Salton* is consistent with the Eleventh Circuit's
acknowledgement in *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843 (11th Cir. 1999) that
it is not necessary for all joint tortfeasors to be joined in one lawsuit.  *Id.* at 847 (citing *Temple v.
Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not necessary for all joint
tortfeasors to be named as defendants in a single lawsuit . . . .  The Advisory Committee Notes to
Rule 19(a) explicitly state that a tortfeasor with the usual 'joint and several' liability is merely a
permissive party to an action against another with like liability.")).  Although the Eleventh Circuit
ultimately held in *Laker Airways* that the absent alleged joint tortfeasor *was* an indispensable party,
that holding cannot be extended to require the joinder of Abbott's former employees in this case,
because the Supreme Court has specifically held that it is not necessary to join a participant in
tortious interference with a contract, when the interfering party is present in the suit.  *See Arkansas
v. Texas*, 346 U.S. at 369.

suit, those employees' interests will not be impaired or impeded if they are not joined to this lawsuit. Epocal has cited no authority to support a contrary holding. The primary case upon which Epocal relies, an unpublished opinion from a district court in Pennsylvania, is distinguishable. In *Synygy, Inc. v. ZS Associates, Inc.,* No. 07-3536, 2008 WL 1820936 (E.D. Pa. April 23, 2008), as in the present case, the plaintiff alleged a tortious interference claim based upon the defendant's alleged hiring of the plaintiff's former employees in violation of employment agreements containing covenants against disclosure and competition. *Id.* at *1. The court found that the plaintiff's former employees were necessary and indispensable parties, and it dismissed the lawsuit. *Id.* The court cited Fed. R. Civ. P. 19(a)(2)(i), but appears to have actually based its decision upon subsection (a)(2)(ii) of the Rule, which requires joinder of a party who risks being subjected to multiple or inconsistent obligations. The court did note, as Abbott has noted here, that it would be required to assess whether the Agreements allegedly interfered with were valid and enforceable, and whether the defendant had unlawfully hired the plaintiff's former employees. The decision nonetheless focused on the fact that the former employees had already been sued in another forum, thus implicating concerns over multiple or inconsistent liabilities. *Id.* Those concerns are not present here.

### III. CONCLUSION AND ORDER

In accordance with the foregoing, defendant's motion to dismiss plaintiff's claim for tortious interference is DENIED.

DONE this 23rd day of June, 2008.

_____
United States District Judge