# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| ABBOT POINT OF CARE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Action No. CV-08-S-543-NE |
| | ) |
| EPOCAL, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This patent infringement action is before the court on the motion filed by defendant Epocal, Inc. ("Epocal" or "defendant") for leave to amend its answer to assert a defense of patent invalidity.[1]

## I. PROCEDURAL HISTORY

This is not the first time this court has addressed defendant's ability to assert invalidity. On May 28, 2008, plaintiff moved for partial summary judgment on any invalidity defense that defendant *might* have asserted, based upon the doctrine of assignor estoppel.[2] In response, defendant maintained that it "ha[d] not yet asserted

---

[1]Doc. no. 34.

[2]Doc. no. 17. In its answer, defendant had asserted the following affirmative defense: "Defendant has not infringed, contributorily, and/or induced infringement of any *valid* or enforceable claim of the '455, '664, '824, or '416 patents and is not liable for infringement thereof." Doc. no. 6 (Answer), at 10, ¶ 7 (emphasis supplied). Concerned that the affirmative defense encompassed an allegation of invalidity, plaintiff moved for summary judgment on any invalidity allegations.

a defense of invalidity."[3]  The court concluded that "[i]t would be improper . . . to grant summary judgment on a non-existent defense," and consequently denied plaintiff's motion for summary judgment, without prejudice to plaintiff's right to refile the motion if defendant later expressly asserted an invalidity defense.[4]  The court cautioned defendant that it would not be allowed to conduct any discovery on the issue of invalidity unless and until it amended its answer to expressly state the defense, and reminded defendant that such an amendment would be allowed "*only* with leave of court, and *only* within the firm deadlines for making invalidity contentions and amending pleadings set forth in the Scheduling Order."[5]

Defendant moved for leave to amend its answer on August 12, 2008, the deadline established by the Scheduling Order for amending pleadings.[6]  Defendant's proposed amended answer would add the following language: "The '455, '664, '824, and '416 patents are invalid for failure to meet one or more of the requirements of Title 35 of the United States Code, including 35 U.S.C. §§ 102 and 103."[7]  According to defendant, this defense now is necessary because plaintiff's Preliminary Infringement Contentions (which were served on June 17, 2008) indicate that plaintiff

---

[3]Doc. no. 25, at 9.

[4]Doc. no. 30, at 1-2.

[5]*Id.* at 2.

[6]*See* doc. no. 34 (motion for leave to amend answer); doc. no. 28 (Scheduling Order), at ¶ 4.

[7]Doc. no. 34, Exhibit A (proposed amended answer), at 10, ¶ 8.

2

plans to propose "an overly broad claim construction of the asserted patents" that would render the patents invalid over the prior art.[8]

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2). Further,

> [t]he Supreme Court has emphasized that leave to amend must be granted absent a specific, significant reason for denial:
>
>> In the absence of any apparent or declared reason — such as *undue delay*, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of amendment*, etc. — the leave sought should, as the rules require, be freely given.

*Spanish Broadcasting System of Fla., Inc. v. Clear Channel Communications, Inc.,* 376 F.3d 1065, 1077 (11th Cir. 2004) (quoting *Forman v. Davis,* 371 U.S. 178, 182 (1962)) (emphasis supplied).

## III.  DISCUSSION

### A.  Undue Delay

In response, plaintiff first argues that defendant should not be allowed to amend its answer because it unduly delayed in asserting the proposed invalidity

---

[8]Doc. no. 34, at 2.

defense.  The court does not agree.  First, the cases cited by plaintiff to support its argument of undue delay are distinguishable in that they involve much more egregious delays than that present here.  *See Reese v. Herbert,* 527 F.3d 1253, 1263 (11th Cir. 2008) (finding undue delay when a motion for leave to amend was filed seven weeks after the close of discovery); *Oxford Furniture Companies, Inc. v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1124 (11th Cir. 1993) (finding undue delay when a motion for leave to amend was filed ten months after the complaint and seven days before the pretrial conference).  Here, defendant became aware of the need to assert an invalidity defense on June 17, 2008, the day that it received plaintiff's Preliminary Infringement Contentions.  Defendant moved to amend its answer on August 12, 2008, slightly less than two months later.  To be sure, the motion to amend could have been brought more quickly than it was, and the court is not blind to the fact that the almost two-month delay likely was nothing more than a strategic litigation tactic.  Even so, the court cannot consider the delay to be *undue*, especially since that defendant filed its motion for leave before expiration of the Scheduling Order deadline for amending pleadings.  Furthermore, the July 11, 2008, order denying plaintiff's motion for summary judgment suggested that defendant would be allowed to amend the answer within the Scheduling Order deadlines.  It would make little sense to consider an amendment to be "unduly" late when it was

4

filed within court-ordered deadlines.

## B.    Futility of Amendment

Plaintiff also argues that defendant should not be allowed to amend its answer because the amendment would be futile.  An amendment is futile if the pleading, as amended, would still be "'subject to dismissal.'" *Hall v. United Insurance Co. of America,* 367 F.3d 1255, 1263 (11th Cir. 2004) (quoting *Burger King Corp. v. Weaver,* 169 F.3d 1310, 1320 (11th Cir. 1999)).  Plaintiff asserts that defendant's proposed invalidity defense would not have survived the previously-filed motion for partial summary judgment.  Accordingly, the court will revisit the arguments made, and the evidence submitted by, the parties in connection with that motion.

### 1.    Standard of Review on a Motion for Summary Judgment

Federal Rule of Civil Procedure 56 indicates that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[9]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate

---

[9] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text suppled).

## 2.    Relevant Facts

Imants R. Lauks is a former employee of i-STAT Corporation ("i-STAT"), the predecessor entity to plaintiff Abbott Point of Care, Inc. ("Abbott" or "plaintiff").[10] On September 10, 1990, Lauks assigned to i-STAT, its successors and assigns, his "entire right, title and interest" to United States Patent application no. 07/555,976 ("the '976 application"), which concerned an invention entitled "Method for

---

[10]Doc. no. 1 (Complaint), at ¶ 14; doc. no. 6 (Answer), at ¶ 14; doc. no. 19 (plaintiff's evidentiary submission), at Exhibit I.

Analytically Utilizing Microfabricated Sensors During Wet-Up."[11]  The assignment encompassed Lauks's "entire right, title and interest in, to and under the said invention, and the said United States Application and all divisions, renewals and continuations thereof, and all Patents of the United States which may be granted thereon and all reissues and extensions thereof. . . ."[12]  In exchange for the assignment, Lauks received one dollar ($1.00) "and other good and valuable consideration."[13]  Lauks also agreed to "make all rightful oaths, and generally do everything possible to aid [i-STAT], its successors, legal representatives and assigns, to obtain and enforce proper protection for said invention in all countries."[14]

Also on September 10, 1990, Lauks executed a "Declaration Power of Attorney and Petition," a document declaring that he was "an original, first, and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention" addressed in the '976 application.[15]

United States Patent No. 5,112,455 ("the '455 Patent"), entitled "Method for Analytically Utilizing Microfabricated Sensors During Wet-Up," issued on May 12, 1992, from the '976 application.  The '455 Patent named Lauks as one of the

---

[11]Plaintiff's evidentiary submission, Exhibit F, at 2, 4.

[12]*Id.* at 2.

[13]*Id.*

[14]*Id.* at 3.

[15]Plaintiff's evidentiary submission, Exhibit G, at 1.

inventors, and named i-STAT Corporation as the assignee.[16]

On September 10, 1994, Lauks assigned to i-STAT, its successors and assigns, his "entire right, title and interest" to United States patent application no. 08/274,387 ("the '387 application"), which concerned an invention entitled "Methods and Apparatus for Rapid Equilibration of Dissolved Gas Composition."[17] The assignment relinquished Lauks's

> full and exclusive right to the said invention in the United States and its territorial possessions and in all foreign countries and [his] entire right, title and interest in and to any and all Letters Patent which may be granted [for the invention] in the Untied States and its territorial possessions and in any and all foreign countries and in and to any and all divisions, reissues, continuations, substitutions and renewals thereof.[18]

In exchange for making the assignment, Lauks received five dollars ($5.00) and "other good and valuable consideration."[19]  Lauks also agreed to "make all rightful oaths, and, generally do everything possible to aid [i-STAT], its . . . successors and assigns, to obtain and enforce proper protection for said invention in the United States and its territorial possessions and in any and all foreign countries."[20]  Also on September 10, 1994, Lauks executed a "Declaration Power of Attorney and Petition"

---

[16]Plaintiff's evidentiary submission, Exhibit H, at 1.

[17]Plaintiff's evidentiary submission, Exhibit A, at 2-3.

[18]*Id.* at 2.

[19]*Id.*

[20]*Id.* at 3.

in which he declared that he was "the original, first, and joint . . . inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention" addressed in the '387 application.[21]

United States Patent No. 5,609,824 ("the '824 Patent"), entitled "Methods and Apparatus for Rapid Equilibration of Dissolved Gas Composition," issued on March 11, 1997. The '824 Patent originated from the '387 application. It names Lauks as one of the inventors, and i-STAT Corporation as the assignee.[22]

United States Patent No. 5,614,416 ("the '416 Patent"), also entitled "Methods and Apparatus for Rapid Equilibration of Dissolved Gas Composition," issued on March 25, 1997. The '416 Patent is a division of the '387 application. It names Lauks as one of the inventors, and i-STAT Corporation as the assignee.[23]

A third patent entitled "Methods and Apparatus for Rapid Equilibration of Dissolved Gas Composition" — United States Patent No. 5,605,664 ("the '664 Patent") — issued on February 25, 1997. The '664 Patent is yet another division of the '387 application. It names Lauks as one of the inventors and i-STAT Corporation as the assignee.[24]

---

[21]Plaintiff's evidentiary submission, at Exhibit B.

[22]Plaintiff's evidentiary submission, Exhibit C, at 1.

[23]Plaintiff's evidentiary submission, Exhibit D, at 1.

[24]Plaintiff's evidentiary submission, Exhibit E, at 1.

After he assigned the patent applications to i-STAT, Lauks left his employment with i-STAT.[25]  Lauks founded Epocal in March of 2001,[26] and he now serves as Epocal's President and Chief Executive Officer.[27] i-STAT formally changed its name to Abbott Point of Care, Inc., on September 22, 2006.[28]

### 3.    Assignor Estoppel

Plaintiff argues that it would be futile for defendant to amend its answer to add an invalidity defense, because that defense would be barred by the doctrine of "assignor estoppel."

> Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity.  The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor.

*Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1224 (Fed. Cir. 1988) (citation omitted).  *See also Westinghouse Electric & Mfg. Co. v. Formica Insulation Co.,* 266 U.S. 342, 349-51 (1924).  In other words, "an assignor should not be permitted to sell something and later to assert that what was sold is worthless, all to the detriment of the assignee."  *Id.*  As such, "the primary consideration in . . .

---

[25]Complaint, at ¶ 23; Answer, at ¶ 28.

[26]Plaintiff's evidentiary submission, at Exhibit J.

[27]Plaintiff's evidentiary submission, at Exhibit K.

[28]Plaintiff's evidentiary submission, at Exhibit I.

applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. [The court's] analysis must be concerned mainly with the balance of equities between the parties." *Id.* at 1225.

> Due to the intrinsic unfairness in allowing an assignor to challenge the validity of the patent it assigned, the implicit representation of validity contained in an assignment of a patent for value raises the presumption that an estoppel will apply. Without exceptional circumstances (such as an express reservation by the assignor of the right to challenge the validity of the patent or an express waiver by the assignee of the right to assert assignor estoppel), one who assigns a patent surrenders with that assignment the right to later challenge the validity of the assigned patent.

*Mentor Graphics Corp. v. Quickturn Design Systems, Inc.,* 150 F.3d 1374, 1378 (Fed. Cir. 1998). The determination of whether to apply assignor estoppel "is a matter committed to the sound discretion of the trial court." *Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.,* 15 F.3d 1573, 1579 (Fed. Cir. 1993).

Defendant primarily relies upon two theories to support its argument that the doctrine of assignor estoppel should not apply. First, defendant asserts that Lauks, the assignor, is not in privity with defendant Epocal. *See Diamond Scientific Co.,* 848 F.2d at 1224 (holding that assignor estoppel "operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor"). "Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities."

11

*Shamrock Technologies, Inc. v. Medical Sterilization, Inc.,* 903 F.2d 789, 793 (Fed.

Cir. 1990).

> Whether two parties are in privity depends on the nature of their relationship in light of the alleged infringement.  "The closer that relationship, the more the equities will favor applying the doctrine" of assignor estoppel.  *Shamrock Techs.,* 903 F.2d at 973.  Assessing a relationship for privity involves evaluation of all direct and indirect contacts.  *See Intel* [*Corp. v. U.S. International Trade Commission*]*,* 946 F.2d [821,] 838 [(Fed. Cir. 1991)].

*Mentor Graphics Corp.,* 150 F.3d at 1379.

Plaintiff claims that Lauks is in privity with Epocal because he is the founder

of Epocal, and he also serves as Epocal's President and Chief Executive Officer.  The

court agrees.  Indeed, this court can scarcely imagine a closer business relationship.

Indeed, the Federal Circuit suggested in its *Diamond Scientific Co.* decision that

similar facts are alone sufficient to establish privity.  *See Diamond Scientific Co.,* 848

F.2d at 1224 (holding that assignor estoppel "operates to bar other parties in privity

with the assignor, *such as a corporation founded by the assignor*") (emphasis

supplied).  *See also Carroll Touch, Inc.,* 15 F.3d at 1579 n.1 (noting that privity was

undisputed when the assignor was the "founder, president, principal executive officer,

and owner of a controlling interest" in the allegedly infringing company); *Saint-*

*Gobain Performance Plastics Corp. v. Truseal, USA, Inc.,* 351 F. Supp. 2d 290, 295

n.5 (D. N.J. 2005) (noting that privity was undisputed when the assignor was the

founder of the allegedly infringing company).

Defendant nonetheless argues that it is not in privity with Lauks because plaintiff has not shown that defendant has "availed itself of [Lauks'] 'knowledge and assistance' to conduct infringement." *Intel Corp.,* 946 F.2d at 839 (citing *Shamrock Techs.,* 903 F.2d at 794 (in turn quoting *Mellor v. Carroll,* 141 F. 992, 994 (C.C.D. Mass. 1905))) (other citation omitted).  According to defendant, there is no privity unless plaintiff can show "an infringing act and a link between Dr. Lauks' knowledge and that act."[29]  This court does not agree that the level of proof required to establish privity is as high as defendant suggests.  Defendant's theory would require a plaintiff to conclusively establish the fact of infringement before it can show privity; in other words, defendant's argument would require a plaintiff to prove its case on the merits before it could assert assignor estoppel to bar an invalidity defense.  There is no authority to support such a requirement.  Indeed, courts have often applied assignor estoppel even when there has been a finding of no infringement, *see, e.g., Carroll Touch,* 15 F.3d at 1579-81 (applying assignor estoppel despite finding of no infringement), or have considered the assignor estoppel issue at an early stage of the litigation, before a finding of infringement has been entered.  *See Diamond Scientific Co.,* 848 F.2d at 1227 (motion to strike an invalidity affirmative defense); *Mentor*

---

[29]Doc. no. 25, at 17.

*Graphics Corp.,* 150 F.3d at 1380 (motion for preliminary injunction); *Cedarapids, Inc. v. Johnson Crushers International, Inc.,* No. 3:02-1243, 2005 WL 2086755, at *3 (M.D. Tenn. Aug. 26, 2005) (motion for partial summary judgment as to claims of invalidity); *Synopsys, Inc. v. Magma Design Automation, Inc.,* No. C004-3923 MMC, 2005 WL 1562779 (N.D. Cal. July 1, 2005) (motion for partial summary judgment as to counterclaim and affirmative defense of invalidity); *Saint-Gobain Performance Plastics Corp.,* 351 F. Supp. 2d at 293-95 (motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to strike pursuant to Federal Rule of Civil Procedure 12(f)); *HWB, Inc. v. Braner, Inc.,* No. 92 C 5900, 1994 WL 447530, at *2 (N.D. Ill. Aug. 16, 1994) (motion for partial summary judgment on counterclaim and affirmative defense of invalidity).

Furthermore, to find that infringement must be conclusively established before assignor estoppel can apply would be inconsistent with the principle that an estopped party is still allowed to introduce evidence of the scope of patent claims in order to defend against infringement allegations. *See Diamond Scientific,* 848 F.2d at 1226; *Mentor Graphics Corp.,* 150 F.3d at 1380 ("An estopped party may also argue for a narrow claim construction . . . or that the accused devices are within the prior art and therefore cannot infringe.") (citations omitted).

In summary, the court finds that Epocal is in privity with Lauks — its founder,

14

President, and CEO — for purposes of applying the doctrine of assignor estoppel.

Defendant also argues that assignor estoppel does not apply because plaintiff cannot show that the patented inventions fall within the scope of Dr. Lauks' assignment. More specifically, defendant asserts that the scope of the claims in the patents as issued *may be* broader than the scope of the applications Dr. Lauks assigned, and "[a]t this early stage of discovery, neither the scope of the assignment nor the bounds of the asserted claims have been determined."[30]

This court is not persuaded. It is true that, when the assignment is of a patent *application*, as distinguished from the assignment of an *issued patent*,

> the scope of the right conveyed in such an assignment is much less certainly defined than that of a granted patent, and the question of the extent of the estoppel against the assignor of such an inchoate right is more difficult to determine than in the case of a patent assigned after its granting.

*Westinghouse Electric,* 266 U.S. at 352-53. This is so because, "[w]hen the assignment is made before patent, the claims are subject to change by curtailment or enlargement by the Patent Office with the acquiescence or at the instance of the assignee and the extent of the claims to be allowed may ultimately include more than the assignor intended to claim." *Id.* at 353. "[B]ecause the bounds of the invention are less certain, the [*Westinghouse Electric*] Court recommended consideration of

---

[30]Doc. no. 38, at 7.

ample evidence to define the assignor's representations." *Q.G. Products, Inc. v. Shorty, Inc.,* 992 F.2d 1211, 1213 (Fed. Cir. 1993).

But it does not follow, as defendant seems to suggest, that assignor estoppel cannot apply to the assignment of a patent application (as opposed to an issued patent), or that the doctrine can only be applied after all disputed patent claims have been construed by the court.  Indeed, the Federal Circuit has explicitly rejected those notions, holding that it is "irrelevant that, at the time of the assignment, [the inventor's] patent applications were still pending and the Patent Office had not yet granted the patents." *Diamond Scientific,* 848 F.2d at 1226.  Instead, the core issue the court should consider in deciding whether to apply the doctrine of assignor estoppel is whether the balance of equities dictates its application. *Id.*  The fact that a patent application, instead of an issued patent, was assigned is "significant in determining the *scope* of the application of the doctrine of assignor estoppel." *HWB, Inc.,* 1994 WL 447530, at *7 (emphasis supplied) (citing *Q. C. Products,* 992 F.2d at 12-13) ("[T]he [appellate] court first decides whether the district court was correct to apply the doctrine of assignor estoppel. . . .  Next this court determines whether the district court correctly ascertained the limits of the assignment.").  Further, an amendment to the claims by the assignee during the application process will not give the assignor's "arguments against estoppel any greater force," because the inventor

has "assigned the *rights* to his invention, irrespective of the particular *language* in the claims describing the inventions when the patents were ultimately granted." *Diamond Scientific,* 848 F.2d at 1226 (emphasis in original).

Here, the following facts are undisputed: Lauks assigned to i-STAT (plaintiff's undisputed predecessor) his "entire right, title and interest" to the '387 and '976 patent applications.  The assignments expressly included any patents, or divisions thereof, issuing from the applications.  The patents in suit (*i.e.,* the '824 Patent, the '416 Patent, the '664 Patent, and the '455 Patent) all either issued from, or were divisions of, the '387 and '976 applications.  Lauks acknowledged receipt of "good and valuable consideration" for each assignment.  He also declared that he was an original inventor of the subject matter described in each application and promised to do anything possible to aid i-STAT (and its successors or assigns) in protecting the assigned inventions.  In other words, Lauks assigned his rights in his inventions to plaintiff's predecessor, and the patents in suit undisputedly arise from those inventions, despite the fact that the language of the claims in the patents ultimately granted may differ from that in the original applications. *See Diamond Scientific,* 848 F.2d at 1226.  Under these facts, the equitable balance weighs heavily in favor of applying the doctrine of assignor estoppel to bar defendant's invalidity defense.  Indeed, the facts presented here demonstrate precisely the situation the doctrine was

designed to prevent.  As the Federal Circuit has held,

> [w]hen the inventor-assignor has signed the Oath, Power of Attorney
> and Petition, which attests to his belief in the validity of the patents, and
> has assigned the patent rights to another for valuable consideration, he
> should be estopped from defending patent infringement claims by
> proving that what he assigned was worthless.

*Diamond Scientific,* 848 F.2d at 1226.

There is no need to gather additional evidence to define the scope of the assigned applications, as defendant suggests.  Defendant relies upon the decision of the Federal Circuit in *Q.G. Products, Inc. v. Shorty, Inc.,* 992 F.2d 1211 (1993), but that case involved circumstances that are not present here.  In *Q.G. Products,* Shorty, Inc. ("Shorty") assigned a patent application ("the '377 application") to an individual named Simon, a former co-owner of the company.  After the assignment, Simon filed one amendment to the '377 application, but then abandoned the application.  However, before he abandoned it, Simon had filed a continuation-in-part of the '377 application ("the '950 application").  The '950 application named the same device as the '377 application, but it added several additional features.  The '950 application eventually matured into the patent at issue in the case.  Simon later assigned his interest in the '950 application to Q.G. Products, Inc., which in turn sued Shorty for patent infringement.  Shorty asserted invalidity of the patent as an affirmative defense, and Q.G. Products argued that the defense was barred by assignor estoppel.

18

*Q.G. Products,* 992 F.2d at 1212.

The Federal Circuit held that the equities weighed in favor of applying assignor estoppel, noting that Shorty had assigned the '377 application to Simon in exchange for valuable consideration. *Id.* at 1213.  The Court next evaluated the scope of the assignment, *i.e.,* whether the patent in suit "claims an invention within the assignment agreement." *Id.*

> The assignment agreement provided that "Simon is the inventor of a drywall corner bead clincher, also known as a Power Actuated Device for Installing Metal Corner Strip, upon which application no. 157,377 is pending before the U.S. Patent Office." Under the agreement, Shorty "waive[d] any claim to said invention or contracts relating thereto, and reassign[ed] its rights thereto to Simon, and agree[d] that neither it nor any of its remaining principals shall have any interest henceforth in said invention.

*Id.* at 1213-14 (bracketed alterations in original).  Shorty argued that its assignment of the '377 application did not encompass the invention in question, because it was the later-filed '950 application, not the '377 application, that eventually matured into the patent in suit, and because the '950 application was only a continuation-*in-part* of the '377 application.  *Id.* at 1214.  The Federal Circuit conducted an in-depth review of both patent applications, as well as the prosecution history, and concluded that the assigned application ('377) embraced the patent in suit.  Consequently, the Court held that assignor estoppel did apply to bar Shorty's assertion of an invalidity

defense.  *Id.* at 1215.

The language of Shorty's assignment to Simon encompassed "said invention," *i.e.,* the invention referenced in the '377 application.  The assignment did not specifically reference any patents that might be granted for the invention, or any divisions or continuations thereof.  Further, the patent in suit issued from a *continuation-in-part* of the original '377 application.  "'A continuation-in-part application, by definition, adds new matter to the parent application previously filed." *Applied Materials, Inc. v. Negevtech, Inc.,* No. C 04-03656 SI, 2005 WL 1656894, at *4 (N.D. Cal. July 14, 2005) (quoting *In re Wertheim,* 646 F.2d 527, 536 (C.C.P.A. 1981)).  Thus, in *Q.G. Products,* it could not clearly be determined, from examining the language of the assigned application, whether the claims of the patent in suit derived from that application.  The scope of the assignment was not clearly defined, and the court was forced to consider additional evidence to determine the proper scope.

Here, in contrast, Lauks's assignments explicitly encompassed the assigned inventions, any patents that might be granted from those inventions, and any divisions or continuations of those patents.  The patents in suit either issued directly from, or were divisions of, the assigned applications.  Clearly, the claims of the patents that issued directly from the assigned applications cannot differ materially from the claims

in the applications.  The only possible difference would have been mere changes in the language of the claim terms, which is not sufficient to trigger the evaluation of additional evidence to determine the scope of claim terms.  *See Diamond Scientific,* 848 F.2d at 1226.  Even the claims of the patents that were divisions of the assigned applications cannot materially differ from the claims in the application, because a division, by definition, claims "only subject matter disclosed in the earlier or parent application . . . ."  MPEP § 201.06.  Stated differently, "a divisional application may depart from the phraseology used in the parent application[, but] there may be no departure therefrom in substance or variation in the disclosure that would amount to 'new matter' if introduced by amendment into the parent application."  *Id.* Consequently, the scope of the assignment can be determined by looking at its language, and the language reveals, without need for further evidence, that the patents in suit derived from the applications assigned by Lauks.  *See Applied Materials,* 2005 WL 1656894, at * 4 ("Given that this case involves an assignment containing clear language regarding continuing applications and that the patent-in-suit was issued from a continuation of the assigned application, the Court finds that it is unnecessary to determine the scope of the assignment.").

Based on the foregoing, the doctrine of assignor estoppel will apply to bar the proposed invalidity defense.  This holding will not, as defendant suggests, give

plaintiff "a free pass in this litigation to assert an overbroad construction of the claims without concern that the patents would then encompass the prior art."[31]  Even though defendant is estopped from asserting invalidity as an affirmative defense, it still may "introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring the[] accused devises outside the scope of the claims of the patents in suit." *Diamond Scientific,* 848 F.2d at 1226.  *See also Mentor Graphics Corp.,* 150 F.3d at 1380 ("An estopped party may also argue for a narrow claim construction . . . or that the accused devices are within the prior art and therefore cannot infringe.") (citations omitted).

### 4.    Rule 56(f) Request for Additional Discovery

Finally, Epocal agues that amending its answer to add an invalidity defense would not be futile, because Federal Rule of Civil Procedure 56(f) would permit the defense to survive summary judgment.  That rule provides:

> **(f) When Affidavits are Unavailable.**  If a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1)    deny the motion;
> (2)    order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3)    issue any other just order.

---

[31]Doc. no. 25, at 14-15.

Fed. R. Civ. P. 56(f) (emphasis in original).  The district court may grant a Rule 56(f)

motion in order to "guard against the premature entry of summary judgment."

*Barfield v. Brierton,* 883 F.2d 923, 931 (11th Cir. 1989); *see also Jackson v. Cintas*

*Corp.,* 425 F.3d 1313, 1316 (11th Cir. 2005).  Rule 56(f)

> "allows a party who 'has no specific material contradicting his
> adversary's presentation to survive a summary judgment motion if he
> presents valid reasons justifying his failure of proof.'" *Wallace v.*
> *Brownell Pontiac-GMC Co.,* 703 F.2d 525, 527 (11th Cir. 1983)
> (quoting 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and*
> *Procedure* § 2740 at 530 (2d ed. 1983)).
>
> A party requesting a continuance under this rule must present an
> affidavit containing specific facts explaining his failure to respond to the
> adverse party's motion for summary judgment via counter affidavits
> establishing genuine issues of material fact for trial.  *SEC v. Spence &*
> *Green Chemical Co.,* 612 F.2d 896, 900 (5th Cir. 1980), *cert. denied,*
> 449 U.S. 1082, 101 S. Ct. 866, 66 L. Ed. 2d 806 (1981).  "The
> nonmovant may not simply rely on vague assertions that additional
> discovery will produce needed, but unspecified, facts," but must show
> the court how the stay will operate to permit him to rebut, through
> discovery, the movant's contentions.  *Id.* at 901.  The grant or denial of
> a continuance is within the sound discretion of the trial court. *Id.;*
> *Wallace,* 703 F.2d at 527; *Walters v. City of Ocean Springs,* 626 F.2d
> 1318, 1321 (5th Cir. 1980).

*Barfield,* 883 F.2d at 931.

The court is not persuaded that the additional discovery proposed by defendant

will present a genuine issue of material fact to preclude the entry of summary

judgment.  Defendant first argues that additional discovery may produce evidence of

a prior art expired patent, which would preclude the application of assignor estoppel.

Defendant relies upon the declaration of its attorney, who states:

> Based upon a reasonable investigation which has been conducted to date in the early stages of this litigation, Epocal also reasonably believes that discovery in this case may uncover evidence that accused aspects of the devices alleged to infringe the patents in suit may practice prior art expired patents, thereby barring the application of assignor estoppel under the law.[32]

The court is not persuaded that defense counsel's statement rises above the level of a "vague assertion" to identify specific facts that will be revealed upon further discovery. *See Barfield,* 883 F.2d at 932 ("If the district court is dissatisfied with the non-movant's explanations as to why he cannot rebut the movant's motion for summary judgment, it may refuse to stay consideration of the motion."). Even if the declaration were deemed to be sufficiently specific to satisfy Rule 56(f) standards, and it is not, the additional discovery described would not necessarily bar the application of assignor estoppel. Defendant backs up its argument with the following quote from the Supreme Court's decision in *Scott Paper Co. v. Marcalus Manufacturing Co.,* 326 U.S. 249 (1945):

> The judgment [below] is affirmed for the reason that we find that the application of estoppel so as to foreclose the assignor of a patent from asserting the right to make use of the prior art invention of an expired patent, which anticipates that of the assigned patent, is inconsistent with the patent laws which dedicate to public use the

---

[32]Doc. no. 26, Exhibit 2 (Declaration of Frank M. Caprio), at ¶ 6.

> invention of an expired patent.  The assignor has a complete defense to
> an action for infringement where the alleged infringing device is that of
> an expired patent.

*Id.* at 257-58.  According to defendant, the Supreme Court thus announced a rule that

"the doctrine of assignor estoppel is barred from application where the accused device

practices a prior art expired patent."[33]  Although a cursory reading of the Supreme

Court's decision might appear to support that interpretation, a closer look reveals that

the point intended by the Supreme Court in *Scott Paper Co.* was more refined.  In

*Scott Paper Co.,*

> the plaintiff-assignee accused the defendant of infringing a patent the
> defendant had assigned to the plaintiff in exchange for valuable
> consideration.  The defendant-assignor maintained that his accused
> device was a copy of that disclosed in an expired prior art patent.  The
> district court held that the assignor was estopped from challenging the
> patent's validity under the doctrine of assignor estoppel, and could not
> resort to an argument of noninfringement based on the prior art to
> "accomplish the same result by indirection."  The court of appeals
> reversed, allowing the assignor to "measure the extent of anticipation for
> the purpose of limiting the claims of the assigned patent, and thus avoid
> infringement."  The Supreme Court affirmed.

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.,* 279 F.3d 1357,

1369 (Fed. Cir. 2002) (citations to *Scott Paper Co.* omitted).

The Court framed the issue before it on appeal as "whether the assignor of a

patent is estopped by virtue of his assignment to defend a suit *for infringement* of the

---

[33]Doc. no. 25, at 18.

assigned patent on the ground that the alleged infringing device is that of a prior art, expired patent." *Scott Paper Co.,* 326 U.S. at 250 (emphasis supplied).  Just before the portion of the *Scott Paper Co.* decision quoted by defendant in its brief, the Court stated the following:

> It is thus apparent that the patent laws preclude the patentee of an expired patent and all others including petitioner [assignee] from recapturing any part of the former patent monopoly; for those laws dedicate to all the public the ideas and inventions embodied in an expired patent.  They do not contemplate that anyone by contract or any form of private arrangement may withhold from the public the use of an invention for which the public has paid by its grant of a monopoly and which has been appropriated to the use of all.  The rights in the invention are then no longer subject to private barter, sale, or waiver . . . .  It follows that the patent laws preclude the petitioner assignee from invoking the doctrine of estoppel, *as a means of continuing as against respondent, his assignor, the benefit of an expired monopoly*, and they preclude the assignor from estopping himself from enjoying rights which it is the policy of the patent laws to free from all restrictions.  For no more than private contract can estoppel be the means of successfully avoiding the requirements of legislation enacted for the protection of a public interest. . . .  The interest in private good faith is not a universal touchstone which can be made the means of sacrificing a public interest secured by an appropriate exercise of the legislative power.  The patent laws preclude us from saying that the patent assignment, which they authorize, operates to estop the assignor from asserting that which the patent laws prescribe, namely, that the invention of an expired patent is dedicated to the public, of which the assignor is a member.

*Scott Paper Co.,* 326 U.S. at 256-57 (citations omitted) (emphasis supplied).

Thus, when the Supreme Court said that assignor estoppel could not be used "to foreclose the assignor of a patent from asserting the right to make use of the prior

26

art invention of an expired patent," it was primarily concerned with the protection of the public's right to the invention embodied in an expired patent. *Id.* at 257.  In other words, the Court did not want the public's right to the invention of an expired patent to be erased by the doctrine of assignor estoppel.  That is why the Court held that an "assignor has a complete defense to an action *for infringement* where the alleged infringing device is that of an expired patent." *Id.* at 258 (emphasis supplied).  That holding cannot be extended, as defendant suggests, to mean that, in any case where a patented invention might have been anticipated by another invention embodied in an expired patent, the doctrine of assignor estoppel cannot apply.  Such a rule would effectively prevent application of assignor estoppel in any case before the end of discovery, because an assignee would have only to assert, in the most conclusory manner (as defendant has done here), that an expired patent *might* be involved before *Scott Paper Co.* would prevent application of the estoppel.

Here, there is no concern that the public will be deprived of its right to the invention of an expired patent.  Even though assignor estoppel will apply to preclude defendant's invalidity defense, defendant still will be allowed to refer to the relevant prior art, *including any prior art expired patents*, to argue for a narrow claim construction and defend against infringement.  *See Scott Paper Co.,* 326 U.S. at 258 (holding that an "assignor has a complete defense to an action for infringement where

27

the alleged infringing device is that of an expired patent").  Thus, defendant has no

need to conduct additional discovery in order to determine whether there are any prior

art expired patents that would preclude the application of assignor estoppel.

Defendant also requests additional discovery to determine whether plaintiff

will be barred by the equitable defenses of unclean hands, laches, and inequitable

conduct from asserting assignor estoppel.  In support, defendant's counsel states the

following in his declaration:

> Based upon a reasonable investigation which has been conducted
> to date in the early stages of this litigation, Epocal reasonably believes
> that discovery in this case may provide evidence of equitable defenses,
> such as Abbott's laches and/or unclean hands, that may bar Abbott's
> claim that assignor estoppel should bar Epocal from asserting invalidity
> of the patents in suit.
>
> . . . .
>
> Epocal further believes that discovery in this case, *as in any
> patent case*, may uncover evidence of inequitable conduct before the
> U.S. Patent and Trademark Office, which if shown, may in turn bar the
> application of assignor estoppel.[34]

This court acknowledges that, because assignor estoppel is an equitable doctrine, its

application can be curtailed, in appropriate circumstances, by equitable defenses.  *See*

*Shamrock Technologies, Inc.,* 903 F.2d at 795 ("[I]n a proper case general principles

of equity may preclude use of assignor estoppel to bar a viable equitable defense

---

[34]Caprio Declaration, at ¶¶ 5, 7 (emphasis supplied).

arising from post-assignment events."). Even so, it takes more than the "mere classification of a defense as equitable" to bar the estoppel. *Id.* at 794.

Here, defendant has not presented anything more than conjectural allegations that additional discovery may reveal evidence to support its argument that assignor estoppel will be barred by an equitable defense. With regard to its allegations of inequitable conduct, defendant offers *no* explanation of what supporting facts it hopes to discover. As plaintiff points out, defendant's mere mention of the words "inequitable conduct" in a brief will not warrant additional discovery pursuant to Rule 56(f). *See Shamrock Technologies, Inc.,* 903 F.2d at 795 (cautioning against the avoidance of assignor estoppel "by merely couching invalidity defenses in terms of inequitable conduct"). Defendant even acknowledges that the likelihood that it will discover additional facts to support an inequitable conduct is not greater than "in any patent case." If the burden were that light, there would be no need for the doctrine of assignor estoppel at all, because an assignor could avoid the doctrine by simply suggesting an allegation (even an unsupported one) of inequitable conduct.

With regard to its allegations of laches and unclean hands, defendant states in its brief that

> Abbott acquired i-STAT, and the asserted patents, after Epocal was formed and began developing its products. At the time of the i-STAT acquisition, Abbott was fully aware of Epocal's existence, including the

role of Dr. Lauks at the company.  Abbott held numerous business discussions with Epocal, both before and after Abbott acquired i-STAT. In none of these discussions did Abbott ever suggest that it believed Epocal's products infringed any i-STAT patent.  To the contrary, Abbott's consideration of acquiring Epocal suggests that Abbott did *not* believe the Epocal products infringed the i-STAT patents.  This conduct suggests the possibility of laches or unclean hands.[35]

Defendant cites no authority to support the notion that these facts could support a finding of laches or unclean hands.  The court does not believe that equity would require Abbott, during the course of corporate acquisition negotiations with Epocal, to accuse Epocal of breaking the law.  Nor does the mere fact that Abbott considered acquiring Epocal suggest that Abbott did not believe that any of Epocal's products infringed i-STAT's patents.  If Abbott had acquired Epocal, then Epocal's products would have become Abbott's products.  Abbott likely would not have been concerned about whether any of its own products infringed an i-STAT patent.  Thus, defendant has not made an adequate showing that additional discovery would reveal a genuine issue of material fact with regard to the defenses of laches and unclean hands. Defendant will not be allowed any additional discovery pursuant to Federal Rule of Civil Procedure 56(f).

## IV.  CONCLUSION AND ORDER

Based on the foregoing, the court concludes that the doctrine of assignor

---

[35]Doc. no. 25, at 20 (emphasis in original).

estoppel applies to bar defendant from asserting a defense of patent invalidity. Accordingly, it would be futile for defendant to amend its answer to assert that defense, and defendant's motion for leave to amend its answer is, therefore, DENIED.

DONE this 19th day of September, 2008.

_____
United States District Judge