FILED
2012 Apr-18  PM 03:12
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ABBOTT POINT OF CARE, INC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-543-NE** |
| | ) | |
| **EPOCAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER ON MOTIONS *IN LIMINE* BY PLAINTIFF ABBOTT POINT OF CARE, INC.**

This opinion addresses eight motions *in limine* filed by plaintiff, Abbott Point of Care, Inc., an entity that plaintiff's counsel refer to by the acronym "APOC" for reasons that are discussed in Part IV, *infra*, but one which this court prefers to reference by the simple, descriptive term "Abbott." Abbott's motions are listed here in the order in which they were filed, but not the arrangement in which they are discussed below: *i.e.,* (1) motion to bar defendant, Epocal, Inc. ("Epocal"), from making pleas to the jury's pecuniary interests;[1] (2) motion to exclude evidence and argument relating to invalidity;[2] (3) motion to exclude evidence regarding corporate size or assets;[3] (4) motion to preclude Epocal from offering evidence or argument

---

[1] Doc. no. 237.
[2] Doc. no. 238.
[3] Doc. no. 239.

regarding Abbott's alleged litigation misconduct;[4] (5) motion to exclude evidence

regarding Epocal's patents;[5] (6) motion to preclude Epocal from presenting its

equitable defenses of unclean hands and equitable estoppel to the jury;[6] (7) motion

to preclude Epocal from offering any evidence or argument regarding Abbott's

request for injunctive relief;[7] and (8) motion to exclude Epocal's cumulative expert

testimony.[8]

Epocal has conceded Abbott's motion to exclude evidence and argument

relating to invalidity (# 2 above), and its motion to preclude Epocal from offering any

evidence or argument regarding Abbott's request for injunctive relief (# 7 above).[9]

## I. ABBOTT'S MOTION TO PRECLUDE EPOCAL FROM PRESENTING
## ITS EQUITABLE DEFENSES OF UNCLEAN HANDS
## AND EQUITABLE ESTOPPEL TO THE JURY

---

[4] Doc. no. 240.

[5] Doc. no. 241.

[6] Doc. no. 242.

[7] Doc. no. 243.

[8] Doc. no. 251.

[9] Doc. no. 264 (Epocal's Response to Abbott's Motion *In Limine* to Exclude Evidence and Argument Relating to Invalidity), at 1 (acknowledging that Epocal "has not raised any invalidity defense for trial and does not expect or intend to argue any such defense"); doc. no. 263 (Epocal's Response to Abbott's Motion *In Limine* to Preclude Epocal from Offering Any Evidence or Argument Regarding Abbott's Request for Injunctive Relief), at 1 ("Epocal does not intend to make such an argument to the jury."). In its objections to Epocal's trial exhibit list and witness list, Abbott states that it objects to Epocal's Exhibit 263 on the grounds stated in its Motion *In Limine* to Preclude Epocal from Offering Evidence or Argument Regarding Abbott's Request for Injunctive Relief. Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and Witness List), at 5 n.5. Abbott did not specify any exhibits to which it objected on the grounds stated in its Motion *In Limine* to Exclude Evidence and Argument Relating to Invalidity.

2

This case presents both legal and equitable issues.  Abbott's claims for patent infringement and tortious interference with contractual relations are legal claims that must be decided by a jury.  Epocal's defenses of estoppel and unclean hands, on the other hand, are equitable in nature, and must ultimately be decided by this court.  The dual nature of the claims presented has raised complex questions as to the order in which the issues should be tried.

The court presented the parties three options at the pre-trial conference.  The first was to conduct separate trials, with evidence on all legal issues being presented to a jury during the first trial, and evidence on all equitable matters presented to the court, outside the hearing of the jury, during the second.  *See* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.").  The second option was to conduct parallel trials, divided between morning and afternoon sessions, with legal issues tried before a jury during the morning, and equitable issues tried to the court during the afternoon.  The third option was to simultaneously try legal and equitable issues before the same jury, and to require the jurors to return advisory verdicts on the factual matters related

to the equitable claims, with the final decision on the equitable issues being reserved to the court.  *See* Fed. R. Civ. P. 39(c) ("In an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right, unless the action is against the United States and a federal statute provides for an nonjury trial.").

Abbott's motion *in limine* promotes an approach that falls somewhere between the court's first and second options:[10]

1.   The jury would be instructed about and would decide only the legal issues in the case — patent infringement (including willfulness) and tortious interference.

2.   To the extent that the evidence Epocal wishes to offer in support of its equitable estoppel defense is also relevant to the issue of willfulness, Epocal would be permitted to present that evidence (subject, obviously, to the Court's rulings on admissibility) to the jury and argue to them how that evidence bears on the willfulness issue.   Outside the presence of the jury, Epocal could then summarize that same evidence for the Court, who will already have heard it, and argue how it supports equitable estoppel.

3.   At the separate hearing the Court already has set to consider APOC's request for a permanent injunction, the parties could present evidence relating to Epocal's unclean hands defense.

─────────────

[10] *See* doc. no. 242, at 2 ("APOC is not suggesting that the Court has to hold two separate trials (Option 1) or even that the Court split its trial days in half to handle legal issues in the morning and equitable in the afternoon (Option 2).  Instead, APOC proposes an alternative procedure that will reasonably balance the interests of all parties, while conserving to the greatest extent possible the resources of the jury and the Court.").

4

> Airing such evidence in the context of the injunctive proceeding
> makes sense, since the law recognizes that unclean hands is not
> a defense to infringement, but only to the *relief* that the patent
> holder seeks.[11]

Abbott is opposed to having evidence relating to Epocal's defenses of unclean hands and equitable estoppel presented to the jury, even in an advisory capacity, because it believes such evidence will unduly prejudice the jury against Abbott and will divert attention from Epocal's own, allegedly-infringing conduct.[12]   There is authority to support Abbott's position.   For example, in *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135 (N.D. Iowa 2003), The defendant asked for the jury to serve in an advisory capacity on its affirmative defenses of laches, waiver, and estoppel, and "to render an advisory verdict through special interrogatories and verdict forms with respect to those issues." *Id.* at 149. The defendant also argued that

> its equitable defenses are factually very closely related to its defense to
> Pioneer's case-in-chief and that it would be a waste of judicial

---

[11] *Id.* at 3 (emphasis in original).  In its objections to Epocal's trial exhibit list and witness list, Abbott states that it objects to the following exhibits on the grounds discussed in its Motion *In Limine* to Preclude Epocal from Presenting its Equitable Defenses of Unclean Hands and Equitable Estoppel to the Jury: DTX 17-18, 53-56, 63, 65-68, 70-71, 74, 84-85, 90, 102-03, 148-60, 162, 243-44, 269-74, 287, 290, 292, 304-41, 350, 352-55, 360, 2013-14, 2016-18, and 2042.  Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and Witness List), at 4 n.4.

[12] *See, e.g.,* doc. no. 242, at 8 ("There can be no basis for Epocal to introduce its equitable estoppel defense to the jury except to confuse the jury regarding the issues before it by focusing the jury on APOC's actions during and after negotiations in an attempt to divert attention from its own infringing conduct.").

resources, as well as confusing and prejudicial to Ottowa, to force Ottowa to segregate its proofs into two separate and largely duplicative proceedings, one to a jury, and one to the court.

*Id.*  The district court rejected the defendant's arguments in favor of the plaintiff's argument that allowing the jury to hear evidence on the defendant's equitable defenses would be unfairly prejudicial and confusing to the jury.  According to the court, "admission of such evidence or reference to such [equitable] defenses might invite the jury to make a determination on the basis of 'equitable' considerations that do not properly enter into any determination that the jury must make."  *Id.* at 149-50. Therefore, the court held that the equitable defenses of defendant Ottawa Plant Food would be tried in a non-jury proceeding separate from Pioneer's infringement claim. *Id.* at 150.

Similarly, in *THK America v. NSK, Ltd.,* No. 90 C 6049, 1996 WL 33398071 (N.D. Ill. Jan. 9, 1996), the court noted that evidence relating to the defendant's affirmative defense of inequitable conduct was, in essence, evidence of fraud.  *Id.* at *1.  The trial judge concluded that a high risk of prejudice and confusion of the issues would result if that evidence was presented to the jury, because then "the inventor and not the invention" might be put on trial.  *Id.*  After commenting that "a patent case is complex and confusing enough for a jury without infusing evidence which has no relevance to the issues to be decided by the jury," the court held that, to the extent

possible, all evidence of fraud on the part of the inventor should be presented outside the presence of the jury. *Id.* at *1-2. *See also Dekalb Genetics Corp. v. Syngenta Seeds, Inc.,* No. 4:06CV01191, 2008 WL 382385, at *2 (E.D. Mo. Feb. 12, 2008) ("There is no need to burden the jury with evidence of equitable misconduct that is to be decided by the Court.").

On the other hand, there also is authority to support Epocal's contrary position. Epocal asserts that

> the evidence concerning the affirmative defenses [of equitable estoppel and unclean hands] overlaps considerably with Epocal's defense against Abbott's jury-trial claim of willful infringement. Both the case law and judicial efficiency strongly favor in such a situation having all the evidence presented to the jury and having the jury's verdict on the affirmative defenses advise the Court with respect to its ultimate decision on those defenses.[13]

It is true that, when there are factual questions common to both legal and equitable claims, those facts must be tried to the jury in order to preserve the constitutional right to a trial by jury. *See Cabinet Vision v. Cabnetware,* 129 F.3d 595, 600 (Fed. Cir. 1997) (quoting *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 503 (1959) (in turn quoting *Scott v. Neely,* 140 U.S. 106, 109-10 (1891))).

Moreover, the court agrees with Epocal that there is substantial overlap

---

[13] Doc. no. 267 (Epocal's Opposition to Abbott's Motion *In Limine* to Preclude Epocal from Presenting its Equitable Defenses of Unclean Hands and Equitable Estoppel to the Jury), at 1 (alteration supplied).

between the evidence to be presented on Abbott's claim for willfulness and the

evidence to be presented on Epocal's affirmative defenses of equitable estoppel and

unclean hands.  To establish willfulness, Abbott

> must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. *See* [*Safeco Insurance Co. of America v. Burr,* 551 U.S. 47, 68-69 (2007)] ("It is [a] high risk of harm, objectively assessed, that is the essence of recklessness at common law.").  The state of mind of the accused infringer is not relevant to this objective inquiry.  If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*In re Seagate Technology, LLC,* 497 F.3d 1360, 1371 (Fed. Cir. 2007) (first bracketed

alteration supplied, second bracketed alteration in original).

To succeed on its affirmative defense of unclean hands, Epocal must

demonstrate that "the doors of a court of equity" should be closed to Abbott because

it is "tainted with inequitableness or bad faith relative to the matter in which [it] seeks

relief, however improper may have been the behavior of [Epocal]."  *Precision

Instrument Manufacturing Co. v. Automotive Maintenance Machinery,* 324 U.S. 806,

814-15 (1945) (bracketed alterations supplied).

To succeed on its affirmative defense of equitable estoppel, Epocal must

establish the following three elements.

8

*The first is* that the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that he does not intend to enforce the patent against the alleged infringer.  The conduct may include specific statements, action, inaction, or silence where there was an obligation to speak.  *The second element is* that the alleged infringer relies on the patentee's conduct.  *The final element is* that due to the reliance, the alleged infringer will be materially prejudiced if the patentee is permitted to proceed with its infringement suit.  Being an equitable doctrine, estoppel is committed to the sound discretion of the trial judge whose decision we review under the abuse of discretion standard.

*ABB Robotics, Inc. v. GMFanuc Robotics Corp.,* 52 F.3d 1062, 1063-64 (Fed. Cir. 1995) (emphasis supplied) (citing *A.C. Aukerman Co. v. R.L. Chaides Construction Co.,* 960 F.2d 1020, 1028 (Fed. Cir. 1992)).

Epocal states that it intends to prove its defense of equitable estoppel by demonstrating that Abbott

knew about Epocal's technology since Abbott gained control of the Asserted Patents in 2004, Abbott had intermittent negotiations with Epocal from 2003 to 2007, and Abbott did not express any concern that Epocal would infringe the Asserted Patents by selling its product in the United States until Abbott filed this lawsuit in March of 2008.  If Epocal proves such facts to the jury, then Abbott's silence in the face of its control of the Asserted Patents and its knowledge of Epocal's device and technology for years before filing the lawsuit is very probative of lack of willfulness.[14]

Epocal also states that it

intends to prove that Abbott's hands are unclean because it brought this

[14] *Id.* at 7.

9

case for improper business reasons, to drain the limited resources of a small, start-up competitor, and not because Epocal infringes the patents. As support, Epocal will show that Abbott completely revised its infringement positions during this litigation. . . . Abbott's changing position is relevant not only to support the evidence that Abbott initiated this case to drain Epocal's resources, rather than out of genuine concern over patent infringement, but also is probative of the lack of an objectively high likelihood of infringement.[15]

In light of these overlapping factual issues, the court concludes that Epocal's affirmative defenses should *not* be tried separately from Abbott's infringement claims, especially Abbott's assertion that Epocal's infringement was willful. *See Haworth, Inc. v. Herman Miller, Inc.,* No. 1:92 CV 877, 1993 WL 761974, at *4 (W.D. Mich. July 20, 1993) (noting that "the issues of laches, estoppel, and willfulness are intertwined with common factual determinations"). The court recognizes the potential for Abbott to suffer some prejudice as a result of the jury hearing evidence of its own misconduct; nevertheless, the court concludes that the risk of prejudice is outweighed by Epocal's interest in preserving its right to a jury trial on its defenses to Abbott's claim of willfulness, as well as by considerations of judicial efficiency. Due to the substantial overlap in underlying facts, it will be extremely difficult to determine precisely what testimony should be presented to the jury, and what testimony should only be heard by the court. Attempting to make that

---

[15] *Id.* at 8-9.

determination likely will require frequent objections, numerous sidebar conferences, and other discussions outside the hearing of the jury.  Such continual interruptions of proceedings not only will unnecessarily prolong the trial, but it also will distract the jury's focus.  Furthermore, many of the same witnesses likely will be called to present evidence on both the legal issue of willfulness and the equitable issues of estoppel and unclean hands.  Those witnesses may be required to return to court several days after testifying before the jury in order to present testimony to the court on the equitable issues, resulting in inconvenience to the witnesses and unnecessary repetition of their testimony.

Other district courts have reached the same decision under similar circumstances.  In *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A.,* No. 4:02-cv-40327, 2004 WL 5508752 (S.D. Iowa Sept. 9, 2004), the court held, over the plaintiff's objection of unfair prejudice, that the affirmative defense of inequitable conduct should be presented to the jury for an advisory verdict.  *Id.* at *3-4.  The court found that

> the evidence of inequitable conduct will be overlapping and intertwined with the evidence necessary on other issues in the case; and to the extent it is not, the Court is confident that the jury, with direction from counsel and the Court, will be able to discriminate as to questions to be decided by the jury and issues to be decided by the Court.  Under the unique circumstances of this case, the Court finds that bifurcation of the trial on the issue of inequitable conduct is both unnecessary and an undue

11

burden on the parties and the Court.

*Id.* at \*4.  *See also Cornell University v. Hewlett-Packard Co.,* No. 01-CV-1974, 2006 WL 2739678, at \*6-7 (N.D. N.Y. Sept. 25, 2006) (choosing to submit equitable defenses to an advisory jury rather than bifurcating the trial based on considerations of conservation of judicial resources and convenience of witnesses); *Medtronic Xomed, Inc. v. Gyrus ENT, LLC,* 440 F. Supp. 2d 1333, 1336 (M.D. Fla. 2006) (finding, when there was substantial factual overlap between legal defense of patent invalidity and equitable defense of inequitable conduct, that holding a separate bench trial on the equitable issues after the jury had heard the remainder of the evidence "would not be the most efficient use of judicial resources, and could require re-calling witnesses who will or had testified at the jury trial").

In conclusion, the court will exercise its discretion to deny Abbott's motion to preclude Epocal from presenting its equitable defenses of unclean hands and equitable estoppel to the jury.  *See, e.g., Cedarapids, Inc. v. CMI Corp.,* No. C98-0110 MJM, 1999 WL 33656876, at \*1 (N.D. Iowa Oct. 26, 1999) ("Whether or not to bifurcate a trial is left to the sound discretion of the trial court.") (citing *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1200 (8th Cir. 1990)) (other citations omitted).  The same jury empaneled to decide Abbott's infringement claims (and Epocal's legal defenses thereto) also will render an advisory decision on Epocal's equitable defenses

of equitable estoppel and unclean hands.  The parties will be required to submit

proposed interrogatories and verdict forms for the equitable issues in accordance with

the instructions at the end of this opinion.

## II. ABBOTT'S MOTION TO PRECLUDE EPOCAL FROM OFFERING EVIDENCE OR ARGUMENT REGARDING ABBOTT'S ALLEGED LITIGATION MISCONDUCT

Abbott also asks the court to exclude all evidence of its alleged litigation

misconduct, which Epocal proposes to offer in support of its affirmative defense of

unclean hands.[16]  More specifically, Abbott states that, as part of its unclean hands

defense,

> Epocal intends to argue to the jury at trial that APOC[17] has engaged in
> misconduct in this litigation, specifically that (i) APOC did not conduct
> a reasonable pre-suit inquiry because it did not run independent
> scientific tests on Epocal's device before filing suit; and (ii) APOC,
> through its attorneys, supplemented and refined its infringement
> contentions in this matter between the time it served preliminary
> infringement contentions on June 17, 2008 (early on in the case) and the
> time it served final infringement contentions on July 30, 2010 (after
> extensive fact discovery, but before expert reports were due).[18]

---

[16] In its objections to Epocal's trial exhibit list and witness list, Abbott states that it objects
to the following of Epocal's exhibits on the grounds stated in its Motion *In Limine* to Preclude
Epocal from Offering Evidence or Argument Regarding Abbott's Alleged Litigation Misconduct:
*i.e.,* DTX 21-22, 35-47, 62-68, 70-71, 74, 85, 90, 102-03, 148, 243-44, 269-74, 287, 290, 292, 2013-
14, 2016-18, and 2020.  Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and
Witness List), at 5 n.6.

[17] As noted on the first page of this opinion, the attorneys for plaintiff, Abbott Point of Care,
Inc., prefer to refer to their client by the acronym "APOC," for reasons that are discussed in Part IV
of this opinion, *infra*.

[18] Doc. no. 240, at 2 (bracketed alteration enclosing footnote 17 supplied).

Abbott asserts that any such evidence should be barred for the following reasons:

> (i) a challenge to APOC's pre-suit investigation and litigation conduct should have been made, if it all, pursuant to a timely Rule 11 motion, which Epocal did not pursue; it is too late now; (ii) APOC's decision not to perform scientific tests before filing suit, and its later decision to supplement its infringement contentions under Rule 26, cannot, as a matter of law, constitute unclean hands; (iii) APOC's infringement claims have now survived Epocal's comprehensive summary judgment challenge, negating any possible argument that APOC lacked the minimal basis required to file suit in the first instance; (iv) no matter when advanced, Epocal cannot challenge privileged decisions made by APOC in consultation with counsel; and finally (v) even if evidence of APOC's litigation conduct had any relevance (and it does not), it is far outweighed by the prejudice that such evidence would cause to APOC, and thus it fails under Federal Rule 403.[19]

## A.    Rule 11

The pertinent parts of Federal Rule of Civil Procedure 11 read as follows:

> By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[19] *Id.* at 2-3.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  If a party or attorney violates any of these rules, the court may impose sanctions, including nonmonetary directives, monetary payments to the court, or payment of the opposing party's attorney's fees and expenses.  Fed. R. Civ. P. 11(c).

Abbott asserts that Rule 11 is an exclusive remedy, in this sense:  if a party fails to file a motion for Rule 11 sanctions during the course of litigation, that party is precluded from relying upon any of the facts that might have supported such a motion in pursuing any other course of relief (like an unclean hands defense).  Abbott cites two district court decisions in support of its theory.  First, in *X-It Products, LLC v. Walter Kidde Portable Equipment, Inc.,* 155 F. Supp. 2d 577 (E.D. Va. 2001), the defendant argued that the plaintiff had unclean hands due to material misrepresentations it made during the course of pre-litigation business negotiations between the two companies, as well as unspecified other misconduct during the litigation.  *Id.* at 600.  The court held:

> With respect to Kidde's allegation that X-IT has engaged in

15

litigation misconduct, including numerous discovery failures and frauds, the Court finds that the appropriate remedy is for Kidde to file a motion to compel and/or a motion for sanctions in this Court. Indeed, Kidde has already filed both such motions with the Court. Not surprisingly, X-IT likewise has filed a motion to compel and a motion for sanctions with the Court. The procedures and remedies available in the Federal Rules of Civil Procedure were specifically designed to apply to a case such as this in which the parties dispute anything and everything. As Kidde has alternative remedies available to it with regard to X-IT's alleged litigation conduct, the Court STRIKES Kidde's unclean hands argument in so far as it relates to alleged litigation misconduct only.

*Id.* at 601. With respect to Kidde's allegation that X-IT engaged in *pre-litigation* misconduct that should bar its recovery of equitable relief, the court held that there were disputed issues of material fact with regard to whether X-IT had made material misrepresentations to Kidde prior to the commencement of the lawsuit. Accordingly, the court denied summary judgment on the remaining aspects of the equitable defense of unclean hands and allowed the claim to proceed to an evidentiary hearing. *Id.*

The *X-IT* court did not mention Rule 11, much less hold that Rule 11 was an exclusive remedy when an opponent has engaged in misconduct like that alleged by Epocal here. Further, the "litigation misconduct" in *X-IT* consisted of "discovery failures and frauds," which is nothing like the inequitable behavior alleged by Epocal here, *i.e.,* filing suit for an improper purpose. Moreover, the *X-IT* court actually *denied* summary judgment with regard to the defendant's allegations of the plaintiff's *pre-suit* misconduct, which are much more like the allegations advanced by Epocal

16

in this case.  Therefore, the *X-IT* case does not lend support to Abbott's argument.

Abbott also cites *Mag Instrument, Inc. v. JS Products, Inc.,* 595 F. Supp. 2d 1102 (C.D. Cal. 2008), in support of its motion.  In that case, the defendant asserted an affirmative defense of unclean hands based upon the plaintiff's attachment of two inaccurate pictures of the defendant's product to its complaint.  *Id.* at 1110. Importantly, the court actually *denied* the plaintiff's motion to strike the affirmative defense of unclean hands, in which plaintiff had asserted that the defendant's allegations "'fail to provide a legally recognized basis for an unclean hands defense.'" *Id.*  The court went on to grant the plaintiff's motion for judgment on the pleadings with regard to the unclean hands defense, holding that the defendant had not presented sufficiently "clear evidence of wrongdoing by the plaintiff during the course of the litigation." *Id.*  Thus, if anything, the *Mag Instrument* case supports the proposition that allegations of inequitable conduct in association with the filing of a complaint *can* support an affirmative defense of unclean hands, as long as the allegations are sufficiently severe.  While the plaintiff in *Mag Instrument* argued that the defendant's allegations of pleading inaccuracies should have been presented to the court in the form of a Rule 11 or other motion, the court apparently rejected that argument, as it moved on to consider the merits of the defense.

In summary, Abbott has presented no persuasive authority to support its theory

that the failure to file a Rule 11 motion for sanctions based on litigation misconduct bars the later assertion of the affirmative defense of unclean hands based on the same misconduct.

**B.   Supplementation of Infringement Contentions and Failure to Perform Pre-Suit Testing as Bases for Unclean Hands Defense**

Abbott also asserts that neither its decision not to conduct scientific testing on Epocal's product prior to filing suit, nor its decision to supplement its infringement contentions through the course of the litigation can, as a matter of law, form the basis of Epocal's affirmative defense of unclean hands.

**1.   Pre-suit scientific testing**

Abbott asserts that the fact that it, "in consultation with its counsel, made a determination not to run independent scientific tests on Epocal's products prior to filing suit cannot support Epocal's unclean hands defense and so should be barred."[20] Abbott's primary argument is based on this court's memorandum opinion and order addressing Epocal's *Daubert* motion to exclude portions of the testimony of Abbott's expert witness, Dr. James Tusa.[21]  In that opinion, this court held that Dr. Tusa was qualified to testify as an expert witness despite never having actually conducted a scientific examination of Epocal's device, because Dr. Tusa had based his testimony

---

[20] *Id.* at 5.
[21] Doc. no. 215.

on other reliable information, including Epocal's own test data.[22]  Abbott extrapolates

from that holding the conclusion that scientific testing of an accused device prior to

filing a patent infringement action is not necessary and, therefore, evidence of failure

to conduct testing cannot form the basis of an unclean hands defense.  That is too

much of a stretch.  Even if Dr. Tusa is permitted to testify as an expert despite his

failure to perform testing  — and even if, as Abbott asserts, a patent infringement

plaintiff is not necessarily required to always perform pre-suit scientific testing of the

accused product — evidence of Abbott's failure to conduct pre-suit testing still could

be relevant to the unclean hands affirmative defense.[23]

## 2.   Supplementation of infringement contentions

Abbott served Epocal with Preliminary Infringement Contentions on June 17,

2008.[24]   In those preliminary disclosures, Abbott identified five distinct "gas

equilibration reservoirs" in the Epocal device, including:

> 1) rectangular volumes that extend along the length of the conduit
> at the sensor region, but are distinct from the sensor region[;]

---

[22] *Id.* at 25-26.

[23] Abbott also baldly asserts that allowing Epocal to present evidence of its failure to conduct pre-litigation scientific testing would result in "clear prejudice" to it.  Doc. no. 240, at 5.  As Abbott does not explain the nature of this prejudice, the court does not find it to be so "clear," and in any event, it does not outweigh the probative value of the evidence to Epocal's affirmative defense.

[24] *See* doc. no. 260 (Epocal's Opposition to Abbott's Motion *In Limine* to Preclude Epocal from Offering Evidence or Argument Regarding Abbott's Alleged Litigation Misconduct), at Exhibit 1 (Preliminary Infringement Contentions).

2) a volume of ambient air that interfaces the calibrant fluid within the chamber and forms a gas/liquid interface near the sensor array[;]

3) a volume of air between the sensor substrate module and lower heating block, separated by a gas permeable material[;]

4) electrode and/or sensor membranes include gas permeable materials that house volumes of gas to create gas equilibration reservoirs[;]

5) "L"-shaped volume connected to the valve that fluidically connects the sensor region to the calibrant fluid chamber[.]

All reservoir forms [described] above contain a predetermined composition of calibrant gases, e.g., ambient air and/or a known composition of gases introduced at manufacture.

All reservoir forms [described] above are positioned in the conduit.[25]

An important component of Epocal's argument is the fact that Abbott did not identify *the conduit walls* of Epocal's card as an alleged "gas equilibration reservoir" in its preliminary disclosures serve on June 17, 2008.

Abbott submitted its Final Infringement Contentions on July 30, 2010, after conducting discovery and receiving the court's claim construction rulings. In its final disclosures, Abbott identified the alleged "gas equilibration reservoir" in Epocal's device as the "plastic material abutting the conduit"; in other words, *the conduit*

---

[25] *Id.* at 5-7 (bracketed alterations supplied).

*walls.*[26]

Epocal asserts that Abbott's Final Infringement Contentions are evidence that it didn't just *supplement* its infringement theory, but, instead, that Abbott "changed the theory completely."[27]  According to Epocal, this evidence supports the claim that Abbott did not have a good faith basis for filing suit.  In response, Abbott argues that the supplementation of its infringement contentions cannot form the basis for Epocal's unclean hands defense, because Abbott was *required* by Federal Rule of Civil Procedure 26(e) to supplement its preliminary disclosures.

The court agrees that the mere fact that Abbott supplemented its infringement contentions does not necessarily mean that it lacked a good faith basis for asserting its original contentions.  Even so, the supplemental contentions still could be relevant to Epocal's unclean hands defense.  As discussed in PartI, *supra,* this court will make the final decision on Epocal's equitable defenses, including the defense of unclean hands.  The court can determine the appropriate weight to give to any evidence regarding Abbott's decision to alter its infringement theories during the course of the litigation.  There is no reason to completely exclude that evidence.

## C.    Effect of Abbott's Survival of Summary Judgment

---

[26] Doc. no. 171, Exhibit 34 (Final Infringement Contentions), at 32-33 (bracketed alterations supplied).

[27] Doc. no. 268, at 8.

This court entered an order on February 9, 2012, denying Epocal's motion for summary judgment on all of Abbott's infringement claims, because there were "genuine issues of material fact precluding the entry of judgment as a matter of law in defendant's favor."[28]   Abbott now asserts that the court's denial of summary judgment "ends any potential inquiry into whether [it] had a good faith basis to sue."[29] Abbott relies on the Advisory Committee Notes to the 1993 amendments of Federal Rule of Civil Procedure 11, which state, in pertinent part:

> The certification is that there is (or likely will be) "evidentiary support" for the allegation, not that the party will prevail with respect to its contention regarding the fact.  That summary judgment is rendered against a party does not necessarily mean, for purposes of this certification, that it had no evidentiary support for its position.  On the other hand, if a party has evidence with respect to a contention that would suffice to defeat a motion for summary judgment based thereon, it would have sufficient "evidentiary support" for purposes of Rule 11.[30]

Even so, the Rule 11 inquiry is not identical to the unclean hands inquiry. Thus, while the court agrees that its denial of Epocal's motion for summary judgment is a relevant consideration in the analysis of Epocal's defense of unclean hands based on Abbott's alleged failure to conduct a proper pre-filing investigation, it does not necessarily mean that the defense is preordained to failure.  Indeed, the court also

---

[28] Doc. no. 216, at 1.

[29] Doc. no. 240, at 8.

[30] Adv. Comm. Notes to Fed. R. Civ. P. 11 (1993 Amends.).

denied Abbott's motion for summary judgment on the unclean hands affirmative defense, stating that there was sufficient evidence of Abbott's unclean hands to warrant submitting the defense to the jury.[31]

In summary, the court concludes that the denial of Epocal's motion for summary judgment does not warrant exclusion of any evidence regarding its unclean hands defense.

## D.    Privilege

Abbott also asserts that it should not be forced to divulge privileged communications in order to explain its litigation conduct.  It points to Epocal's claims that it only decided not to conduct pre-litigation testing of the Epocal device *after* it consulted with counsel.  According to Abbott, "[t]his argument, and others like it, are improper and should not be allowed, for they call directly into question the consultations Abbott had with its lawyers prior to filing suit."[32]

Abbott once again cites only cases arising in the Rule 11 context.  To the extent those cases also apply in the context of an unclean hands defense, the most important lessons to be learned from the cases also can be gleaned from an examination of the Advisory Committee's notes on the 1983 revisions to Rule 11:

---

[31] Doc. no. 217 (Memorandum Opinion and Order on Abbott's Motion for Summary Judgment on Certain Epocal Affirmative Defenses), at 21.

[32] Doc. no. 240, at 9.

The rule does not require a party or an attorney to disclose privileged communications or work product in order to show that the signing of the pleading, motion, or other paper is substantially justified.   The provisions of Rule 26(c), including appropriate orders after *in camera* inspection by the court, remain available to protect a party claiming privilege or work product protection.[33]

Ten years later, during the 1993 amendments to Rule 11, the Committee noted that motions based upon Rule 11 should not be prepared in order to "seek disclosure of matters otherwise protected by the attorney-client privilege or the work-product doctrine."[34]

The court agrees that similar principles should apply here.  Abbott should not be forced to disclose information otherwise protected by the attorney-client privilege or the work-product doctrine, simply because Epocal has raised the issue of Abbott's pre-filing investigations as part of its unclean hands defense.  That does not mean, however, that Epocal should not be allowed to present *any* evidence of Abbott's pre-filing investigations, or lack thereof, in support of its defense.

The first case cited by Abbott actually is instructive of a balanced approach. In *Highmark, Inc. v. Allcare Health Management Systems, Inc.,* 732 F. Supp. 2d 653 (N.D. Tex. 2010), the court considered a motion for sanctions under Rule 11 based on the defendant's alleged failure to conduct an adequate investigation before filing

---

[33] Adv. Comm. Notes to Fed. R. Civ. P. 11 (1983 Amends.).

[34] Adv. Comm. Notes to Fed. R. Civ. P. 11 (1993 Amends.).

a counterclaim.  *Id.* at 654-55.  The court did state, in passing, that a party "is not required to disclose privileged information in defense of its pre-filing efforts." *Id.* at 660.  But that was not the end of the discussion, and the result was not that the court excluded all evidence regarding the alleged failure to conduct an adequate pre-filing investigation.   Instead, the court went on to note that, "privilege issues notwithstanding," all parties "must comply with the law." *Id.*  When faced with the accusation that it had failed to conduct an adequate pre-filing investigation, the defendant/counter-claim plaintiff "was not entitled to at once rely on the opinion of counsel to justify its filing of counterclaims but withhold the details of counsel's pre-filing efforts — the sort of details that would allow the Court to verify the adequacy of counsel's efforts — based on privilege." *Id.*[35]

Similarly, here, Abbott is free to decide how it wants to defend against Epocal's unclean hands allegations.  If it chooses to rely upon an "advice of counsel" defense to the allegations of unclean hands, that would "open the door" for Epocal to question it about otherwise protected communications.   If Abbott prefers for attorney communications to remain protected by the privilege, it should rely upon some other defense. *See In re EchoStar Communications Corp.,* 448 F.3d 1294, 1299

---

[35] The other cases cited by Abbott are not very helpful, except to quote the above language from the Advisory Committee Notes to Rule 11.  *See TEGG Corp. v. Beckstrom Electronic Co.*, No. 08-435, 2008 WL 5216169, at *3 (W.D. Pa. Dec. 10, 2008); *Watson v. Poore,* No. 05-4047-JLF, 2006 WL 2349968, at *2 (Aug. 11, 2006).

(Fed. Cir. 2006) ("[W]hen EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter.").  In any event, the possibility that responding to Epocal's allegations of unclean hands may require Abbott to disclose some otherwise protected information should not prevent Epocal from asserting the defense altogether.  Epocal will be permitted to present evidence to support its claim that Abbott had unclean hands when filing this lawsuit, including evidence regarding Abbott's pre-suit investigations.  Even so, Abbott will not be required to disclose any information protected by the attorney-client privilege, unless there has been a waiver of the privilege.  The best way to determine whether evidence should be allowed is to await the context in which it is presented at trial.

## E.    Prejudice

Finally, Abbott asserts that the probative value of evidence of its alleged litigation misconduct is outweighed by the potential for prejudice and confusion of the jury.  *See* Fed. R. Evid. 403.[36]  Abbott's arguments about jury confusion are addressed by the court's decision that the jury, in an advisory capacity, will hear evidence supporting defendant's affirmative defenses of equitable estoppel and

---

[36] Abbott asserts that evidence of its alleged litigation misconduct is irrelevant to the issue of whether Epocal infringed its patents.  That argument completely misses the point, because Epocal is not offering the evidence of alleged misconduct to refute Abbott's infringement claim; it is offering the evidence to support its own defense of unclean hands.

unclean hands, but that the ultimate decision on those issues will be reserved to the court.  Abbott also asserts that it will be prejudiced if the jury begins to disfavor its infringement case because Epocal has "sow[n] doubt in their minds with irrelevant evidence about whether Abbott ran pre-filing tests three years ago and whether its *preliminary* infringement contentions were refined as the case progressed through discovery."[37]   The court disagrees, and concludes that any such prejudice is outweighed by Epocal's need to present the evidence in support of its equitable defenses.

## F.    Summary

In conclusion, Abbott's motion to exclude all evidence and argument of its alleged litigation misconduct is due to be denied.

## III. ABBOTT'S MOTION TO BAR EPOCAL FROM MAKING PLEAS TO THE JURY'S PECUNIARY INTERESTS

Abbott next asks the court to prevent Epocal from appealing to the jurors' "pecuniary interests" by arguing that Epocal is the manufacturer of lower-cost medical equipment, or that Epocal's product is a lower-cost alternative to Abbott's device.  Abbott asserts, in a general manner, that any such evidence would be irrelevant, prejudicial, and confusing to the jury.[38]

---

[37] Doc. no. 240, at 11 (bracketed alteration supplied, emphasis in original).

[38] *See* doc. no. 237, at 1-3.  In its objections to Epocal's trial witness and exhibit lists, Abbott

27

In response, Epocal offers the explanation that "it does not intend to appeal to the jury's pecuniary interest" by arguing that the jurors' medical costs will increase if the jury returns a verdict finding that Epocal infringes Abbott's patents.[39]   Such an argument would be analogous to an insurance company presenting evidence or argument that insurance premiums will increase if a judgment is entered against it, and courts consistently reject such appeals.   *See, e.g., Bourg v. Fireman's Fund Insurance Co.,* No. Civ.A. 99-1066, 2000 WL 14681, at *2 (E.D. La. Jan. 6, 2000) (holding that it would be prejudicial to allow an insurance company to present evidence that insurance rates would increase if the plaintiff was awarded damages).

Even so, Epocal does oppose Abbott's motion "to the extent that it would prevent Epocal from presenting evidence that Epocal set out to and did design a less expensive product."[40]   Epocal asserts, for example, that the jury will need to hear background information about the development of its company, including the business model aimed at providing a lower cost product, and that Epocal's intent to produce a lower cost *alternative* to Abbott's device (as distinguished from an intent to *copy* Abbott's device) is necessary for Epocal's defenses to Abbott's claims for

states that it objects to Exhibits 69 and 357-59 on the grounds stated in its Motion In Limine to Bar Epocal from Making Pleas to the Jury's Pecuniary Interests. Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and Witness List), at 6 n.7.

[39] Doc. no. 269 (Epocal's response to Abbott's Motion *In Limine* to Bar Epocal from Making Pleas to the Jury's Pecuniary Interests), at 1.

[40] *Id.* at 2.

willful infringement.

The court is persuaded by Epocal's argument.  Abbott's motion will be granted in part and denied in part.  Epocal will not be permitted to appeal to the jury's pecuniary interests by directly arguing, or even suggesting, that the jurors' medical costs will increase if they find infringement.  That does not mean, however, that Epocal will not be permitted to present *any* evidence about the relative cost of its products, if that evidence is relevant to another issue in the case.[41]  In order to ensure that Epocal does not attempt to take unfair advantage of this ruling, defense counsel must approach the bench and request a side-bar conference *before* offering any evidence bearing upon defendant's "business model," make an offer of proof, and persuade the court that the line of questioning upon which they propose to embark is relevant to some other issue in the case.

## IV. ABBOTT'S MOTION TO EXCLUDE EVIDENCE REGARDING CORPORATE SIZE OR ASSETS

Abbott "anticipates that Epocal may seek to use information about APOC's

---

[41] This court is respectfully aware of the decision of the United States District Court for the Northern District of Illinois in *Abbott Laboratories v. Torpharm, Inc.,* No. 97 C 7515, 2003 WL 22462614 (N.D. Ill. Oct. 29, 2003).  There, the court held that evidence of the lower cost of the defendant's drug should be excluded as irrelevant to the plaintiff's claims for infringement because it "does not make it more or less probable that the drug infringes Abbott's patents." *Id.* at *15.  Even though the *Torpharm* case, cited by Abbott, is only persuasive authority, the court concludes that the decision in the present case is not inconsistent with the decision in *Torpharm*.  Just as the court concluded in *Torpham,* Epocal's attempts, in this case, to develop a potentially lower-cost alternative to Abbott's device likely will not inform the decision whether Epocal's device infringes Abbott's patents, but it still may be relevant to other issues.

size and assets — or those of its parent, Abbott Laboratories — to bias the jury against APOC by portraying this case as a 'David v. Goliath' struggle," and asserts that this allegedly "irrelevant and misleading information will have no purpose other than to ignite the jury's emotions and create an improper bias in the minds of the jurors."[42]   Therefore, Abbott requests the court to exclude any such information as irrelevant, misleading, and unfairly prejudicial.

The court agrees with Abbott that the relative sizes and assets of the two parties is not relevant to the primary issue at the heart of Abbott's claims — *i.e.,* whether Epocal infringed Abbott's patents.  Even so, as Epocal points out, such evidence *may* be relevant to its affirmative defenses of unclean hands and equitable estoppel, as well as to its defenses to Abbott's claim for tortious interference with contractual relationships.  As part of its unclean hands defense, Epocal asserts that Abbott brought this lawsuit for improper reasons, such as draining Epocal's limited resources and preventing it from competing with Abbott in the marketplace.  As part of its equitable estoppel defense, Epocal will assert that both Abbott and its parent, Abbott Laboratories, were involved in negotiations to acquire Epocal.  The relative corporate sizes of the parties will be necessary background information to support those

---

[42] Doc. no. 239, at 1.  In its objections to Epocal's trial exhibit list and witness list, Abbott states that it objects to Epocal's exhibits 107 and 2043 on the grounds stated in its Motion *In Limine* to Exclude Evidence Regarding Corporate Size or Assets.  Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and Witness List), at 5 n.6.

theories.  In defense of Abbott's tortious interference claim, Epocal will argue that some of the Abbott employees who left to work for Epocal did so because they were excited about the idea of working for a small start-up company, not because they were wrongfully enticed to do so by Epocal.  Finally, the fact that Abbot Laboratories is Abbott's parent company also may be relevant to Epocal's defense of Abbott's tortious interference claims, because some of the employment contracts that allegedly were interfered with by Epocal actually were executed by the employee and *Abbott Laboratories*, and not the corporate entity that instituted this action, *Abbott Point of Care, Inc.*[43]

Abbott alternatively argues that, even if evidence of the relative sizes and assets of Abbott Laboratories, Abbott Point of Care, Inc., and Epocal is relevant to some issue in the case, the evidence still should be excluded because it would be misleading or unduly prejudicial.  Abbott asserts that "such evidence creates a dangerous risk of unfair prejudice among the jury, who may be motivated to sympathize with Epocal because of Abbott's and Abbott Laboratories' position and strength in the marketplace."[44]  The court disagrees, and concludes that any risk of such prejudice lies only in the minds of plaintiff's attorneys; but that, even if such risk

---

[43] *See* doc. no. 265 (Epocal's Opposition to Abbott's Motion *In Limine* to Exclude Evidence Regarding Corporate Size or Assets), at Exhibits 4-8 (employment contracts).

[44] Doc. no. 239, at 2.

actually exists, it is outweighed by Epocal's need to present evidence relevant to its defenses.

Abbott also asserts that mentioning the name of its parent company, Abbott Laboratories, would mislead the jury because of the name similarity between Abbott Laboratories, which is a large, wealthy company, and the entity known as "Abbott Point of Care, Inc.," which is smaller and possesses more limited resources. While the court recognizes some minimal risk of *confusion*, that risk does not warrant excluding all mention of the parent company, especially considering that the existence of the parent company is relevant to Epocal's affirmative defenses and its defenses to Abbott's affirmative claims of tortious interference, as discussed more fully above. Of course, counsel for Abbott is free to take steps to distinguish the entity they directly represent from its parent company in the minds of the jury. Quite obviously, plaintiff's counsel already have taken one such step, by referring to the plaintiff in all pre-trial submissions by the acronym "APOC," rather than the descriptive term employed by this court and Epocal, "Abbott."

Finally, Abbott asserts that allowing Epocal to introduce evidence of its relatively small size would be misleading, because Epocal may not be as small as it would like the jury to believe. According to Abbott, "Epocal has partnered with a large and established pharmaceutical company, Alere Inc., to handle marketing and

distribution of its infringing EPOC System."[45]  The court agrees that, if Epocal is allowed to present evidence of its relatively small size, then Abbott also should be allowed the opportunity, in rebuttal, to produce evidence of Alere's financial support and partnership with Epocal.  That does not mean, however, that all evidence of the relative sizes and assets of Abbott Laboratories, Abbott Point of Care, Inc., and Epocal should be excluded.

In summary, Abbott's motion will be granted in part and denied in part.  The parties will be allowed to present evidence regarding the relative sizes and assets of Abbott and Epocal, as well as the existence of Abbott's parent company, Abbott Laboratories, insofar as that evidence is relevant to one of Epocal's defenses, or to any other issue in the case.  Even so, the court will not permit either party to misuse such evidence by arguing, or even suggesting, that Epocal cannot afford to pay damages to Abbott if a verdict of infringement is returned, or that Abbott and its parent company, Abbott Laboratories, are so large and wealthy that they have no need for Epocal's money.

## V. ABBOTT'S MOTION TO EXCLUDE EVIDENCE REGARDING EPOCAL'S PATENTS

Abbott asserts that Epocal should not be permitted to introduce evidence that

---

[45] Doc. no. 239, at 3.

it holds its own patents to cover all or part of the accused device.[46]  According to

Abbott,

> [t]hese patents are not asserted in this matter, were never relied upon by
> Epocal's fact or expert witnesses, and are wholly irrelevant to the
> infringement issues presented.  The only purpose these patents could
> serve would be to suggest to the jury that Epocal's accused EPOC
> product cannot infringe Abbott's patents-in-suit because it is covered by
> the other patents issued to Epocal.   Such an inference is highly
> prejudicial and, more to the point, is flat wrong as a matter of patent law
> and can only mislead the jury.[47]

Abbott correctly points out that "a defendant cannot use its own patent as a

defense to patent infringement."[48]  Indeed, the Federal Circuit has explicitly held that

"the existence of one's own patent does not constitute a defense to infringement of

someone else's patent.  It is elementary that a patent grants only the right to exclude

others and confers no right on its holder to make, use, or sell."  *Bio-Technology*

*General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) (quoting

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.

4 (Fed. Cir.1991) (internal quotation marks omitted).  Therefore, evidence that a

---

[46] Abbott asserts that "Epocal has included on its exhibit list the following patents that are assigned to Epocal and/or on which Dr. Imants Lauks is listed as an inventor: U.S. Patent Nos. 6,845,327; 6,896,778; 7,094,330; 7,767,068 (mis-identified on exhibit list as 7,776,068); 7,824,529; 7,842,234; 8,124,026."  Doc. no. 241, at 1.  Also, in its objections to Epocal's trial exhibit list and witness list, Abbott states that it objects to the following exhibits on the grounds stated in its Motion *In Limine* to Exclude Evidence Regarding Epocal's Patents: DTX 239, 264, 281-86, and 296-303. Doc. no. 272 (Abbott's Objections to Epocal's Trial Exhibit List and Witness List), at 3 n.3.

[47] *Id.*

[48] *Id.* at 1-2.

34

defendant holds a patent covering all or a portion of the accused device is not relevant to a determination of whether the defendant directly infringed the plaintiff's patent.

It is possible, nevertheless, that evidence of Epocal's patents *may be* — but, is not necessarily — relevant to some other issue in the case. One issue to which such evidence is *not relevant* is Abbott's claim that Epocal "copied" its product. Epocal essentially is arguing that it did not copy the Abbott design, but actually "designed around" it.[49] Evidence to support that theory could just as easily be derived from an examination of the accused device itself; there is no need to also refer to the claim language of Epocal's patents. Epocal's other arguments are more persuasive, however.

First, Epocal asserts that evidence of its patents is relevant to Abbott's claims of willful infringement. Indeed, the Federal Circuit held in *King Instrument Corp. v. Otari Corp.,* 767 F.2d 853 (Fed. Cir. 1985), that evidence of the defendant's patent was relevant to the plaintiff's claims of willfulness because, "by relying on the issuance of its patent, which even cited the [plaintiff's] patent as prior art, [defendant's] management might reasonably have believed that its actions were protected as within its own patentably distinct claims, while falling outside the

---

[49] *See* doc. no. 270 (Epocal's Opposition to Abbott's Motion *In Limine* to Exclude Evidence Regarding Epocal's Patents), at 3 ("[T]he Epocal patents describe how the Epocal design avoids the problems identified in the asserted patents that resulted in the need for the claimed invention.").

[plaintiff's] patent claims."  *Id.* at 867.

Additionally, the existence of defendant's patents may be relevant to some of Epocal's affirmative defenses, including equitable estoppel and unclean hands.  For example, the Epocal patents could be relevant in determining whether Abbott considered Epocal's inventions to be "new," or whether Abbott was familiar with the details of Epocal's developing product, during the purchase negotiations that took place between Abbott and Epocal.

Even if evidence of defendant's patents is relevant to an issue in this case, the question remains whether admission of that evidence would be unfairly prejudicial, confuse the issues, and/or mislead the jury.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").  Abbott asserts that, if evidence of Epocal's patents is allowed, then the jurors may be confused about what patents actually are at issue, or they may wrongly conclude that Epocal's ownership of other patents covering the accused products means that Epocal cannot be found to infringe Abbott's patents.  In support, Abbott cites the decision of the United States District Court for the Eastern District of Louisiana in *Cameco Industries, Inc. v. Louisiana Cane Manufacturing,* No. 92-3158,

36

1995 WL 468234 (E.D. La. July 27, 1995). There, the court found that admitting evidence of a patent obtained by the defendant "would be unfairly prejudicial to the plaintiff, as this evidence is likely to give the jury the false impression that a patent on the accused machine means that it is substantially different from the machine claimed in plaintiff's patent." *Id.* at *6. Moreover, said the *Cameco* court, admitting evidence of the defendant's patent "would shift the focus of the trial from the validity and infringement of [plaintiff's] patent to the validity of [defendant's] patent. A detour of this sort would be only distracting and confusing to the jury, while providing little, if any, relevant information." *Id.*

This court appreciates this potential for jury confusion. Even so, the court concludes that any risk of confusion or other prejudice would be outweighed by the probative value of the evidence to issues like willfulness, or the affirmative defenses of estoppel or unclean hands. That is particularly true considering that the potential for jury confusion could be reduced by use of a limiting instruction.[50]

In summary, the court finds that Epocal should be allowed to produce evidence of the existence of its patents covering the accused device in order to support its

---

[50] *See, e.g.,* doc. no. 270, Exhibit 6 (N.D. Cal. Model Instructions), at 4 ("You may hear evidence that the [alleged infringer] has its own patent(s) or that [alleged infringer] improved on the [] patent. While this evidence is relevant to some issues you will be asked to decide, a party can still infringe even if it has its own patents in the same area. You will be instructed after trial as to what, if any, relevance these facts have to the particular issues in this case. Meanwhile, please keep an open mind.") (bracketed alterations in original).

defense to Abbott's claim of willfulness, or Epocal's affirmative defenses of equitable estoppel or unclean hands.  Accordingly, Abbott's motion will be denied in this regard.  Even so, counsel for Epocal are cautioned that they will not be permitted to exceed the bounds of this court order by arguing that evidence of defendant's patents actually is relevant to Abbott's claims for infringement.

## VI. ABBOTT'S MOTION TO EXCLUDE EPOCAL'S CUMULATIVE EXPERT TESTIMONY

Abbott asserts that the expert reports of Epocal's two expert witnesses, Dr. William Olbricht and Dr. Ranil Wickramasinghe, "are, in large part, devoted to the same subject matter and are therefore cumulative."[51]  Abbott thus anticipates that Epocal will attempt to offer similarly cumulative expert testimony at trial, and it moves to exclude that testimony under Federal Rule of Evidence 403.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence.").

As Abbott points out, the first three paragraphs of both expert reports contain the exact same language:

> 1.      I submit this report at the request of defendant, Epocal, Inc. ("Epocal").

---

[51]Doc. no. 251, at 1.

2.      I understand that Abbott Point of Care Inc. ("Abbott") alleges that certain products manufactured and sold by Epocal infringe claim 1 of United States Patent No. 5,609,824 ("the '824 Patent"), claims 1 and 2 of United States Patent No. 5,605,664 ("the '664 Patent"), and claim 1 [of] United States Patent No. 5,614,416 ("the '416 Patent"). I refer to these claims collectively as the "Asserted Claims" and I will refer to the patents collectively as the "Gas Patents."

3.      I have been asked to provide opinions concerning whether the accused Epocal products infringe the Asserted Claims. My opinions, as set forth in the body of the report, are based on materials that I have reviewed to date . . . . I reserve my right to supplement my analysis and opinions based on any additional argument or information that comes to my attention.[52]

The two experts also reach similar conclusions. Both conclude that the accused Epocal device does not infringe the claims of Abbott's patents because it does not contain a "gas equilibration reservoir,"[53] and because the calibrant fluid in the Epocal device does not achieve an "equilibrated dissolved gas composition that reflects substantially the predetermined composition of calibrant gases contained in said reservoir."[54] The final paragraph in both reports states; "For the bases set forth above, it is my opinion that Epocal's EPOC system does not infringe any Asserted Claim in the Gas Patents either literally or under the Doctrine of Equivalents."[55]

---

[52] Doc. no. 251, Exhibit A (Expert Report of Dr. William Olbricht), at ¶¶ 1-3; *id.*, Exhibit B (Expert Report of Dr. Ranil Wickramasinghe), at ¶¶ 1-3 (bracketed alteration and ellipses supplied).

[53] *See* Olbricht Report, at ¶ 70; Wickramasinghe Report, at ¶ 45.

[54] *See* Olbricht Report, at ¶ 96; Wickramasinghe Report, at ¶ 46.

[55] *See* Olbricht Report, at ¶ 110; Wickramasinghe Report, at ¶ 52.

The two experts also have similar qualifications.

Both Drs. Olbricht and Wickramasinghe (i) have a bachelor's degree in chemical engineering, (ii) have a Ph.D. in chemical engineering, (iii) are and have been university professors in the field of chemical engineering and biomedical engineering, and (iv) worked on and studied the microcirculation or microfiltration of blood or plasma.[56]

Finally, the two experts rely on some of the same evidence to form their opinions, including documents describing the polymeric material used in the Epocal device, and drawings and specifications describing the device.

Abbott argues that all of these similarities render Dr. Olbricht's and Dr. Wickramasinghe's reports redundant, and that allowing both experts to testify at trial would unnecessarily prolong the proceedings and result in unfair prejudice to Abbott because it could give the impression that Epocal's case is stronger, simply because Epocal has two expert witnesses, while Abbott only has one.  *See Royal Bahamian Association, Inc. v. QBE Ins. Corp.*, No. 10-21511-CIV, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010) (slip copy) ("Unnecessarily similar and cumulative expert testimony may create the risk that a jury will resolve differences in expert opinion by 'counting heads' instead of by giving fair consideration to the quality and credibility of each expert's opinions.") (citing *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, No. 01 C 0736, 01 C 5825, 2004 WL 1899927, at *25 (N.D. Ill. Aug.23, 2004)).

---

[56] Doc. no. 251, at 3.  *See also* the *curriculum vitae* appended to each expert's report.

The district court has broad discretion in controlling the evidence presented at trial, including the decision whether to exclude cumulative evidence. *Tran v. Toyota Motor Corp.*, 420 F.3d 1310, 1315 (11th Cir. 2005). If the qualifications and proposed testimony of Dr. Wickramasinghe and Dr. Olbricht were *exactly* identical, as Abbott suggests, the court would not allow both witnesses to testify, because doing so would waste its own time and that of the jury. As Epocal explains, however, there are significant distinctions in the two experts' relative backgrounds, perspectives, and methodologies:

> Dr. Wickramasinghe will testify at trial about a detailed analysis he performed with Epocal's test cards using a Field Emission Scanning Electron Microscope ("SEM"). . . . Dr. Wickramasinghe personally dissected several of Epocal's test cards and photographed the co-polyester material that forms the conduit walls, from which he concluded that no air is held or stored in the conduit walls as required in each of the asserted claims. . . . *His materials-based analysis* is derived from his industrial experience with the research and development of uses of polymeric materials. . . . Indeed, Dr. Wickramasinghe has extensive experience with scanning electron microscopy, having taken hundreds of SEM images of polymeric materials over the course of his career. . . .
>
> Dr. Olbricht has taught chemical and biomedical engineering for the last thirty years. . . . He has spent much of his career applying principles of fluid dynamics and gas diffusion to problems in medicine, including the study of microfluidic circuits. . . . Dr. Olbricht will testify on *the fundamental principles of gas diffusion in liquids and solids*, and why, based on those principles, Epocal's test cards do not infringe the asserted claims. . . . *Further*, Dr. Olbricht will testify as to his consideration of the i-Stat test cartridge as an additional basis for why

the conduit walls of Epocal's test cards do not satisfy the "gas equilibration reservoir" limitation of the asserted claims. . . .[57]

A thorough review of both experts' reports and credentials corroborates Epocal's summary. Due to the nuances in the two experts' respective backgrounds and proposed testimony, the court concludes that both should be allowed to testify at trial.

The cases cited by Abbott are not inconsistent with this decision. In *Tran,* the Eleventh Circuit held that the district court did not abuse its discretion when it excluded the trial testimony of a second expert physician who testified about the plaintiff's neck injury (*after* the treating physician *and* another expert physician already had testified), because the two experts had similar qualifications, relied upon the same medical evidence, and would testify on the same topics. *Tran,* 420 F.3d at 1315-16. The court rejected the argument that the second physician would offer a "macro" (or larger, big-picture) perspective on the plaintiff's injury, while the first physician had testified as to the "micro" (or smaller, more isolated) perspective, because a close look at the two experts' proposed testimony revealed that they actually would cover the same topics. *Id.* Several factors distinguish *Tran* from the present case. First, as set forth above, Dr. Olbricht and Dr. Wickramasinghe have different credentials, and they offer different perspectives on the infringement issue,

---

[57] Doc. no. 266 (Epocal's Opposition to Abbott's Motion *In Limine* to Exclude Epocal's Cumulative Expert Testimony), at 2-3 (emphasis supplied) (citations to expert reports omitted).

even though they ultimately reach the same conclusion. *See id.* at 1315 (distinguishing a prior case where "the excluded expert's 'analysis was somewhat different,' his testimony was 'more comprehensive,' and the witness 'had different, and arguably better qualifications than the other experts'") (citing *Johnson v. United States*, 780 F.2d 902, 906 (11th Cir.1986)).  Additionally, the court in *Tran* excluded the second doctor's testimony only *after* the first doctor already had testified.  *Tran,* 420 F.3d at 1315 ("*After* Dr. Burton testified, Toyota objected to Dr. Clark's testimony as cumulative.") (emphasis supplied).  As such, the court knew exactly what testimony already had been offered, and it could more readily discern whether the second doctor's testimony would be cumulative.  Here, in contrast, Abbott is asking the court to speculate in advance of trial and based on the expert reports that the testimony of the two witnesses will be cumulative.  Finally, and importantly, even though the Eleventh Circuit in *Tran* held that the district court did not abuse its discretion in excluding the second doctor's testimony, it suggested that it probably would not have made the same decision as the district court if it were faced with similar circumstances.  *Id.* at 1316 ("On this record, we cannot say that the court would have abused its discretion had it allowed Dr. Clark to testify.  The testimony likely would not have unduly prolonged the trial, Dr. Clark's practice and experience was somewhat different from that of the other doctors, and Tran might have presented

her evidence differently had she known earlier that Dr. Clark would be excluded.").

Abbott also cites *Abrams v. Ciba Specialty Chemicals Corp.,* No. 08-0068-WS-B, 2010 WL 779273 (S.D. Ala. March 2, 2010). There, the court raised the concern that a proposed expert's testimony might be cumulative of that offered by another proposed expert for the same party. *Id.* at *5. The court did not exclude the second expert's testimony, but cautioned that, to the extent the two experts would offer "identical opinions . . . based on the same underlying evidence," one of the experts would have to be excluded as cumulative. *Id.* However, "to the extent that these two experts are relying on *differing lines of evidence to reach their conclusions* . . ., such that their testimony is complementary rather than redundant, it will be allowed." *Id.* (emphasis supplied). The court therefore directed the party seeking to offer the expert testimony to "coordinate the testimony . . . on direct examination to avoid unnecessary duplication and cumulative evidence, pursuant to Rule 403, Fed. R. Evid." *Id.*

The court is persuaded by the approach taken by the Southern District of Alabama in *Abrams.* Neither Dr. Olbricht nor Dr. Wickramasinghe will be precluded from testifying due to concerns over presentation of cumulative evidence. Even so, Epocal is directed to plan the testimony of those two experts in order to minimize any overlap or repetition. If the testimony of the second expert called to the stand begins

44

to become cumulative of the testimony of the first of them to testify, the court could take appropriate action to minimize any undue delay in the proceedings.

## VII. CONCLUSION AND ORDERS

In accordance with the foregoing, Abbott's motion to exclude evidence and argument related to invalidity,[58] and its motion to preclude Epocal from offering any evidence or argument regarding Abbott's request for injunctive relief,[59] are GRANTED.

Abbott's motion to exclude evidence or argument regarding Abbott's alleged litigation misconduct[60] is DENIED.  Abbott's motion to preclude Epocal from presenting its equitable defenses of unclean hands and equitable estoppel to the jury[61] also is DENIED.  Epocal will be permitted to present evidence supporting those defenses to the jury in an advisory capacity.  The parties are ORDERED to file, on or before April 25, 2012, proposed special interrogatories and verdict forms for submission to the jury with regard to the equitable defenses.

Abbott's motion to bar Epocal from making pleas to the jury's pecuniary

---

[58] *See* doc. no. 238.

[59] *See* doc. no. 243.

[60] *See* doc. no. 240, Part II, *supra*.

[61] *See* doc. no. 242, Part I, *supra*.

interests,[62] Abbott's motion to exclude evidence regarding corporate size or assets,[63] Abbott's motion to exclude evidence regarding Epocal's patents,[64] and Abbott's motion to preclude Epocal's cumulative expert testimony[65] all are GRANTED in part and DENIED in part, and the parties are ORDERED to comply with all the limitations and directives set forth in the body of this opinion.

**DONE** and **ORDERED** this 18th day of April, 2012.

_____
United States District Judge

---

[62] *See* doc. no. 237, Part III, *supra*.

[63] *See* doc. no. 239, Part IV, *supra*.

[64] *See* doc. no. 241, Part V, *supra*.

[65] *See* doc. no. 251, Part VI, *supra*.