FILED

2012 Nov-05  PM 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ABBOTT POINT OF CARE, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-08-S-543-NE** |
| | ) | |
| **EPOCAL, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On May 10, 2012, following the trial of this case, the jury returned a verdict finding that defendant, Epocal, Inc. ("Epocal"), did not infringe any of the claims of the patents owned by plaintiff Abbott Point of Care, Inc. ("Abbott"), and that Epocal did not tortiously interfere with the employment contracts of any of Abbott's former employees.[1]  That verdict represented a fully favorable decision for Epocal, and it was entered as the judgment of this court on May 18, 2012.[2]  On June 1, 2012, Epocal filed a "Motion for a Finding That This Case is Exceptional and Recovery of Attorneys' Fees is Warranted under 35 U.S.C. § 285 and the Court's Inherent Power."[3]  That motion is addressed in this opinion.

---

[1] *See* doc. no. 326 (Jury Verdict Form).

[2] Doc. no. 329.

[3] Doc. no. 334.  For ease of reference, the court will refer to Epocal's motion throughout this opinion as simply a Motion for Attorneys' Fees.

# I. DISCUSSION

## A.   "Exceptional Case" Standard

Epocal's primary argument, and the one the court will address first, is that it should be awarded attorneys' fees because this is an "exceptional case" under 35 U.S.C. § 285.  Attorney's fees are not automatically recoverable in a patent case. Instead, the statute upon which Epocal relies provides that "[t]he court in *exceptional cases* may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis supplied).   That standard was elucidated by the Eleventh Circuit as follows:

> Once it is determined that the party seeking fees is a prevailing party, determining whether to award attorneys' fees under 35 U.S.C. § 285 is a two-step process. *Forest Labs., Inc. v. Abbott Labs*., 339 F.3d 1324, 1327-28 (Fed. Cir. 2003).  First, a prevailing party must establish by clear and convincing evidence that the case is "exceptional." *Id.* at 1327. An award of fees against a patentee can be made for a frivolous claim, inequitable conduct before the Patent and Trademark Office, or misconduct during litigation. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989).  Second, if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Forest Labs*., 339 F.3d at 1328. "[T]he amount of the attorney fees [awarded] depends on the extent to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001).

*Highmark, Inc. v. Allcare Health Management Systems, Inc*., 687 F.3d 1300, 1308 (Fed. Cir. 2012) (alterations in original).[4]

---

[4] In this case, the parties have agreed that the proceedings with regard to attorneys' fees

Here, it cannot reasonably be disputed that Epocal, having received a fully favorable jury verdict, was the prevailing party in this litigation. Thus, the remaining inquiry is whether this case is "exceptional" under § 285. The *Highmark* opinion speaks to that issue in the following passages.

> It is established law under section 285 that *absent misconduct in the course of the litigation* or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). The requirement that the litigation be objectively baseless "does not depend on the state of mind of the [party] at the time the action was commenced, but rather requires an objective assessment of the merits." *Id*. at 1382. "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008) (internal quotation marks omitted).
>
> Furthermore, even if the claim is objectively baseless, it must be shown that lack of objective foundation for the claim "was either known or so obvious that it should have been known" by the party asserting the claim. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007); *see also iLOR, LLC v. Google, Inc*., 631 F.3d 1372, 1377 (Fed. Cir. 2011). This is known as the subjective prong of the inquiry. This same objective/subjective standard applies for both patentees asserting claims of infringement and alleged infringers defending against claims of infringement. *See iLOR*, 631 F.3d at 1377.

*Highmark,* 687 F.3d at 1308-09 (alteration in original, emphasis supplied).

---

should be bifurcated in accordance with this standard. Thus, the court will decide whether defendant is entitled to attorneys' fees before requiring the parties to submit documentation supporting the amount of those fees.

In addition, there is an alternative standard available.  Even when a prevailing

party cannot demonstrate both objective baselessness and subjective bad faith, that

party can still recover attorney's fees under the "exceptional case" standard if it can

prove, by clear and convincing evidence, that the losing party engaged in some kind

of litigation misconduct.  *See id.* at 1308 (employing the "subjective bad faith" and

"objectively baseless" standard only "*absent misconduct in the course of the*

*litigation*") (emphasis supplied).

> Quite apart from the frivolity of the alleged infringement claims, an exceptional case finding can also be supported by litigation misconduct.  *MarcTec* [*LLC v. Johnson & Johnson*], 664 F.3d [907,] 919 [(Fed. Cir. 2012)] ("[I]t is well-established that litigation misconduct and 'unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.'" (quoting *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003))); *Brooks Furniture*, 393 F.3d at 1381 ("A case may be deemed exceptional when there has been . . . misconduct during litigation, . . . conduct that violates Fed. R. Civ. P. 11, or like infractions.").  "Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings," and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith.  *See Old Reliable* [*Wholesale, Inc. v. Cornell Corp.*], 635 F.3d [539,] 549[ (Fed. Cir. 2011)]; *Computer Docking Station Corp.* [*v. Dell, Inc.*], 519 F.3d [1366,] 1379[ (Fed. Cir. 2008)].  A finding of exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees.  *See Beckman*, 892 F.2d at 1553-54.  Instead, the fee award "must bear some relation to the extent of the misconduct," *Special Devices*, 269 F.3d at 1344 (quoting *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992)), and compensate a party for the "extra legal effort to counteract the [ ] misconduct," *Beckman*, 892 F.2d at 1553.

4

*Highmark,* 687 F.3d at 1315-16 (alterations to case citations supplied, other alterations in original).

### 1.    Subjective bad faith and objectively baseless litigation

Epocal contends that Abbott's infringement claims were objectively baseless because there was no basis for the opinion of Abbott's expert that Epocal's device contained a "gas equilibration reservoir" as required by the relevant patents, and because Abbott never analyzed whether the oxygen and carbon dioxide levels in Epocal's device "reflect substantially a predetermined composition of calibrant gases," as also was required by the patents.[5]

That argument is short-circuited by three of this court's previous rulings.  First, this court entered an order on February 9, 2012, denying Epocal's motion for summary judgment because there were "genuine issues of material fact precluding the entry of judgment as a matter of law in defendant's favor on all of plaintiff's claims."[6] The case proceeded to trial, and the court denied two motions by Epocal for judgment as a matter of law:  one after the close of Abbott's case-in-chief,[7] and another at the close of all the evidence.[8]

---

[5] *See* doc. no. 333 (Epocal's brief in support of motion for attorneys' fees), at 27-30.

[6] Doc. no. 216, at 1.

[7] *See* doc. no. 317 (motion for judgment as a matter of law); Clerk's minute entry of proceedings dated May 7, 2012 (noting that Epocal's motion for judgment as a matter of law was overruled by oral order).

[8] *See* Clerk's minute entry of proceedings dated May 9, 2012 (noting that Epocal's renewed

The Federal Circuit has clearly held that, "[*a*]*bsent misrepresentation to the court*, a party is entitled to rely on a court's denial of summary judgment and JMOL . . . as an indication that the party's claims were objectively reasonable and suitable for resolution at trial." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme*, 603 F.3d 943, 954 (Fed. Cir. 2010) (alteration and emphasis supplied) (citing *ResQNet.com, Inc. v. Lansa, Inc*., 594 F.3d 860, 875 (Fed. Cir. 2010); *Forest Labs*., 339 F.3d at 1330; *Beckman Instruments*, 892 F.2d at 1551; *Browning v. Kramer*, 931 F.2d 340, 345 (5th Cir. 1991); *Ruben v. Warren City Sch*., 825 F.2d 977, 988 (6th Cir.1987); *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir.1999)). In *Medtronic,* the Federal Circuit found that the district court erred in characterizing the plaintiff's claims as "frivolous," despite having previously denied the defendant's motion for summary judgment and each of the defendant's motions for judgment as a matter of law during trial. *Medtronic,* 603 F.3d at 954. Based on this authority, unless Epocal can show that Abbott made some kind of misrepresentation to the court during the course of defending against Epocal's motion for summary judgment and motions for judgment as a matter of law, it would be inconsistent for the court, having denied those three motions, to now hold that plaintiff's infringement claims were "objectively baseless."

---

motion for judgment as a matter of law was overruled by oral order).

Epocal asserts that "Abbott's decision to flip-flop positions after an adverse claim construction" constituted a misrepresentation to the court.[9]  More specifically, Epocal asserts in its reply brief that

> Abbott ditched its initial theory and adopted a *contrary* position on "gas equilibration reservoir" to keep this litigation alive after the Court's claim construction ruling.  In effect, Abbott misled the Court and Epocal that the basis for its assessment of infringement theories was reasoned — grounded in a comparison of the claim language as Abbott thought it should be construed and the Epocal product — rather than expedient. After claim construction, Abbott had an obligation to concede infringement, but rather than do so, decided to prolong this litigation by adopting a contrary position.[10]

Epocal also appears to assert that Abbott made misrepresentations to the court because it failed to conduct a proper investigation before filing suit.[11]  Presumably, the argument is that, by filing suit, Abbott misrepresented that there was a proper basis for its claims, when in reality Abbott did not have enough information to make that determination.

But shifting litigation theories and inadequate pre-suit investigations are not the kind of "misrepresentations" that can undermine a district court's denial of summary judgment or judgment as a matter of law.  Instead, according to *Medtronic*,

---

[9] Doc. no. 342 (Epocal's reply brief in support of motion for attorneys' fees), at 15.

[10] *Id.* at 15-16 (emphasis in original).

[11] *Id.* at 16 ("Second, contrary to Abbott's argument, the Federal Circuit's *Medtronic Navigation* decision does not foreclose a finding of an exceptional case when the patentee failed to perform a reasonable investigation to assess infringement before filing suit.").

the denial of summary judgment and/or judgment as a matter of law must actually have been obtained *as a result of* a misrepresentation of the evidence. *See Medtronic,* 603 F.3d at 954 ("Of course, if the party's success at the summary judgment stage is due to false or misleading representations *about its evidence*, the party cannot rely on the district court's denial of summary judgment to shield it from liability for sanctions.") (emphasis supplied). Epocal has presented nothing to convince the court that Abbott actually made false or misleading representations about the evidence at either the summary judgment stage or at trial.

During oral argument on the present motion, Epocal's attorney asserted that Abbott's interpretation of some experimental reports generated by Epocal scientist Dr. Anca Varlan during the development of Epocal's accused product was "*almost* a misleading presentation of evidence."[12]  As an initial matter, it is difficult to imagine how information that defense counsel himself characterizes as *almost* misleading can constitute *clear and convincing evidence* of misrepresentation. Moreover, even disregarding counsel's use of the adjective "almost," the court has seen no clear and convincing evidence that Abbott made misrepresentations to the court in order to survive summary judgment and/or judgment as a matter of law. Epocal asserts that Dr. Tusa, Abbott's expert witness, should not have relied upon Dr.

---

[12] Transcript of October 23, 2012 oral argument, at 33 (emphasis supplied).

Varlan's reports because those reports did not actually reach the conclusions Dr. Tusa claimed they reached.[13]  Even if Epocal is correct in asserting that Dr. Tusa took Dr. Varlan's statements out of context, that is not a sufficiently egregious misrepresentation to negate the effect of this court's denial of summary judgment and judgment as a matter of law.   A *misconstruction* is not the same thing as a *misrepresentation*.  Instead, Epocal's arguments go more toward the weight to be afforded Dr. Tusa's testimony.  Indeed, in its *Daubert* motion to exclude Dr. Tusa's testimony, Epocal objected to Dr. Tusa's reliance upon Epocal's internal documentation, including Dr. Varlan's experimental reports, instead of conducting his own independent experiments.  The court refused to strike Dr. Tusa's testimony on this or any other ground, stating that "If Epocal believes that Dr. Tusa misconstrued the results of its internal tests, or that other, more recent data might have caused him to reach a different conclusion, then Epocal can raise those issues on cross-examination."[14]  Epocal did just that during trial, and apparently was

_____

[13]  By way of example, Dr. Varlan used terms such as "equilibrate" and "reservoir" in her reports.  Those are words that also are included in the claim descriptions of the challenged patents. Abbott argued, through its expert Dr. Tusa, that Dr. Varlan's use of those words indicated Epocal's infringement, but Epocal maintains that Dr. Varlan's reports use the terms differently than they are used in the patent.  Epocal asserts that Dr. Varlan's reports discussed both the conduit and the calibrant pack, while Dr. Tusa's expert report only discussed the conduit; that Dr. Varlan's reports discussed all four walls of the conduit, while Dr. Tusa accused only the side walls as infringing; and that Dr. Tusa relied upon Dr. Varlan's reports to assert that the "substantially reflects" claim term was met, when Dr. Varlan's experiments did not actually even address that question.  Transcript of October 23, 2012 oral argument, at 31-41.

[14] Doc. no. 215 (memorandum opinion and order on *Daubert* motions), at 26.

successful in convincing the jury to afford Dr. Tusa's opinion little or no weight.  Dr. Tusa's opinions may have been unconvincing, but that does not mean that Dr. Tusa misrepresented anything to the court or to the jury.

In summary, Epocal has failed to establish that Abbott's infringement claims were "objectively baseless."  There consequently is no need to proceed to the second prong of the inquiry, *i.e.,* whether Abbott brought the claims in subjective bad faith. *See, e.g., Highmark,* 687 F.3d at 1308 (requiring proof of *both* objective baselessness *and* subjective bad faith); *Brooks Furniture Manufacturing,* 393 F.3d at 1381 ("Since we conclude that the first requirement (subjective bad faith) is not satisfied here, we need not decide whether the second (objectively baseless) standard was met.").

Thus, Epocal can recover attorneys' fees under the "exceptional case" standard only if it can establish that Abbott engaged in litigation misconduct.

### 2.    Litigation misconduct

Epocal asserts in its reply brief that

there is clear and convincing evidence of at least the following material inappropriate conduct by Abbott during this litigation: (1) failing to perform a reasonable investigation of infringement before filing this lawsuit . . . ; (2) requesting expedited discovery to obtain samples of Epocal's product but not testing Epocal's product once it received the expedited discovery; (3) flipping positions after receiving an adverse ruling during claim construction . . . ; (4) constantly shifting infringement theories in search of a "gas equilibration reservoir"; and (5) raising arguments at trial that were contrary to the Court's claim

construction.[15]

Epocal also asserted in its initial brief that Abbott engaged in litigation misconduct by "piling on allegations, only to . . . abandon them on the eve of (and during) trial."[16]

Because Abbott's conduct is alleged to be part of an overall "strategy of vexatious litigation," the cumulative effect of all of Abbott's alleged actions may support a finding of litigation misconduct, even if none of the individual allegations would be sufficient standing alone. *See E-Pass Technologies, Inc. v. 3Com Corp.*, 559 F.3d 1374, 1378 (Fed. Cir. 2009) (upholding the district court's finding of litigation misconduct based on the "totality of the[] circumstances") (alteration supplied); *Beckman Instruments*, 892 F.2d at 1552 ("While it is difficult to infer bad

---

[15] Doc. no. 342, at 5-6 (footnotes omitted).

[16] Doc. no. 333, at 24.  Epocal also makes much of an email sent on January 25, 2008 by Peter Farrell, Abbott's Divisional Vice-President of Global Marketing, to Glynn Perry, Abbott's Divisional Vice-President of Global Sales and Service.  *See* doc. no. 340, Exhibit 6 (Declaration of Peter Farrell) ¶¶ 2, 14 & Exhibit A.  In that email, Farrell stated that the "primary goal" of Abbott's suit against Epocal was "[t]o slow them down (commercial and development) by diverting resource (money and expertise).  To publically show customers that we think they are infringing so they do not consider Epocal seriously.  This will include a detailed explanation to make the customers understand."  Farrell Declaration, Exhibit A.  At oral argument, Epocal's counsel stated that this email constituted "smoking gun" evidence that Abbott brought this lawsuit in bad faith.  Transcript of October 23, 2012 oral argument, at 26.  *See also* doc. no. 333, at 31-32.  There is some debate as to whether Farrell actually had anything to do with Abbott's decision to file this lawsuit, and whether Epocal has any *other* evidence of Abbott's alleged bath-faith motivation for filing suit.  *See* Farrell Declaration ¶¶ 15-18; doc. no. 340, Exhibit 5 (Declaration of Greg Arnsdorff) ¶¶ 31-36.  Regardless of Farrell's level influence over the decision to file suit, that evidence does not bear on the issue of Abbott's *litigation misconduct*.  It would only be relevant to the issue of whether Abbott knowingly brought an objectively baseless lawsuit with bad faith motivations, but the court did not reach that inquiry because Epocal has not presented clear and convincing evidence that this lawsuit was objectively baseless.

faith on the part of LKB when each action is viewed individually, when viewed together, we cannot say that the district court's finding of vexatious litigation was clearly erroneous.").  It must also be remembered that

> [t]here is a presumption that the assertion of infringement of a duly granted patent is made in good faith. *Springs Willow Fashions, LP v. Novo Indus., L.P.*, 323 F.3d 989, 999 (Fed. Cir. 2003).  Thus, the underlying improper conduct and the characterization of the case as exceptional must be established by clear and convincing evidence. *Beckman*, 892 F.2d at 1551.

*Brooks Furniture Manufacturing*, 393 F.3d at 1382.

### a.  Pre-suit investigation

Epocal first asserts that Abbott failed to conduct a proper investigation into the potential merits of its claims before filing suit.  The court is not convinced that Epocal has presented clear and convincing evidence that Abbott failed to conduct an adequate pre-suit inquiry.  Epocal points to Abbott's decision not to test a sample of the Epocal test card Abbott had in its possession prior to filing suit,[17] but this court has already held that Abbott's expert witness was not required to conduct independent testing in order for his testimony to be acceptable under *Daubert*.[18]  If an expert witness's testimony can be deemed sufficiently reliable for presentation to the jury even though he did not conduct independent testing, then a plaintiff should

---

[17] *See* doc. no. 333, at 5.

[18] *See* doc. no. 215, at 25-26.

not be required to conduct similar testing before deciding to file suit.

Epocal asserted during oral argument that this case is like *Judin v. United States,* 110 F.3d 780 (11th Cir. 1997), in which the Eleventh Circuit held that a patent infringement plaintiff had failed to conduct the pre-suit inquiry required by Federal Rule of Civil Procedure 11.  *Id.* at 781.[19]  Prior to filing suit, the plaintiff in the *Judin* case and his attorney observed the accused device (a bar code scanner) in use, but did

---

[19] Transcript of October 23, 2012 oral argument, at 49-53.  Rule 11 provides, in pertinent part, that by signing a pleading, an attorney

> certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The Rule 11 inquiry is not the same as the "litigation misconduct" inquiry under § 285, but the Federal Circuit has held that a Rule 11 violation may be considered as one factor in assessing litigation misconduct under § 285.  *See Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.,* 393 F.3d 1378, 1381 (11th Cir. 2005) ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, *conduct that violates Fed. R. Civ. P. 11*, or like infractions.") (citations omitted) (emphasis supplied).

not ask the defendant for a sample of the allegedly infringing device or otherwise try to obtain one.  The plaintiff also relied on his own experience and familiarity with the devices, and his attorney accepted his client's assessments of the defendant's alleged infringement because of the client's experience.  *Id.* at 781-82.  The Federal Circuit concluded:

> In this case, prior to the filing of the suit, neither Judin or his counsel had made a reasonable effort to ascertain whether the accused devices satisfied the two key claim limitations, either literally or under the doctrine of equivalents.  No adequate explanation was offered for why they failed to obtain, or attempted to obtain, a sample of the accused device from the Postal Service or a vendor so that its actual design and functioning could be compared with the claims of the patent.  Under these circumstances, there is no doubt that Judin failed to meet the minimum standards imposed by Rule 11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.

*Id.* at 784.

This court finds *Judin* to be distinguishable from the present circumstances. Abbott conducted a more thorough inquiry than did the plaintiff in *Judin*, primarily because Abbott *did* actually obtain a sample of at least part of the accused device (*i.e.,* the Epocal test card).  Abbott attempted to develop procedures to test the card, but the procedures either proved ineffective, or they could not be implemented because Abbott did not also have a sample of the Epocal card reader until *after* it filed suit.[20]

---

[20] Doc. no. 340, Exhibit 4 (Declaration of Mike Zelin) ¶¶ 48-50.

Mike Zelin, Abbott's Divisional Vice-President of Research and Development and one of the named inventors on the patents Epocal allegedly has infringed, testified that, before deciding to file suit, he also examined a publicly available abstract related to Epocal's 510(k) application, which contained clinical data.[21]  Once he received a sample of the Epocal test card, Zelin physically inspected it to determine how the card might be controlling oxygen in the calibrant fluid during the calibration process. Based on his experience in the industry, Zelin knew of only three possible methods by which oxygen could be controlled, and he was able to determine during his physical inspection that the Epocal test card did not employ two of those methods. The only remaining method involved the use of technology similar to that described in Abbott's patents.[22]  Zelin also examined copies of Epocal's own patents related to the test card system, and those documents further supported his conclusion that Epocal's device was using the technology described in the claims of Abbott's patents.[23]  The court finds that Zelin's actions constituted a sufficient pre-suit inquiry to avoid a finding of litigation misconduct.  *See Q-Pharma, Inc. v. Andrew Jergens Co.,* 360 F.3d 1295, 1302-03 (Fed. Cir. 2004) (sanctions not awarded under either Rule 11 or § 285 when, prior to filing suit, the plaintiff acquired a sample of the

---

[21] *Id.* ¶¶ 3, 7, 34.

[22] *Id.* ¶¶ 40-43.

[23] *Id.* ¶¶ 44-46.

15

accused product, reviewed advertising and promotional materials, and compared the product to the patent claims, despite the fact that the plaintiff did not conduct chemical testing of the accused product).

### b.    Expedited discovery

Epocal also asserts that Abbott engaged in litigation misconduct by requesting expedited discovery to obtain samples of Epocal's product, but then not testing the product once it was produced.  This appears to be a continuation of Epocal's argument that Abbott failed to conduct an adequate pre-suit investigation.  Now, Epocal is arguing that Abbott failed, *after* filing suit, to take all possible steps to ensure it had a valid claim.  As much as the court does not appreciate the fact that Abbott wasted the court's time by filing the motion for expedited discovery, but then failed to conduct testing on the discovery it obtained, Epocal has not cited any authority to support its assertion that Abbott's behavior constituted litigation misconduct.  To hold that it did would contradict the court's prior rulings that Dr. Tusa was permitted to testify despite not having conducted independent scientific testing, and that Abbott had presented sufficient evidence to survive Epocal's motion for summary judgment.

### c.    Changing positions after claim construction

Abbott also did not engage in litigation misconduct by changing its litigation

16

strategy after receiving an unfavorable claim construction ruling.[24]  It is, of course, true that the claim construction decision often does mark the end of a patent infringement case, either by encouraging a settlement, or by prompting an immediate appeal by the party who received an unfavorable construction.  *See, e.g., Every Penny Counts, Inc. v. American Express Co.,* 563 F.3d 1378, 1381 (Fed. Cir. 2009) (noting that, after the claim construction hearing, the plaintiff "admitted that it could not prove infringement against either set of defendants under [the court's] construction, stipulated to the entry of final judgment in both cases and brought separate appeals").  But, while that course of action is *available* to litigants, or even *common*, there is no authority suggesting that it is *required*.  To the contrary, the Federal Circuit has held that a party is free to alter its litigation strategy after receiving an unfavorable claim construction.  *See Lava Trading, Inc. v. Sonic Trading Management, LLC*, 445 F.3d 1348, 1353 (Fed. Cir. 2006) (holding that a party was not judicially estopped "from departing from a claim construction theory unsuccessfully advocated before the trial court").  Moreover, this court's local patent rules explicitly allow for an amendment to a party's preliminary infringement contentions after the claim construction ruling.[25]

---

[24] Epocal asserts that Abbott and Dr. Tusa originally argued during claim construction that the gas equilibration reservoir was not distinct from the conduit, but then changed positions, after receiving the court's claim construction ruling, to assert that the reservoir *was* distinct from the conduit.  *See* doc. no. 333, at 20-21; doc. no. 342, at 6-9.

[25] *See* Local Patent Rule 3.6(a) ("If a party claiming patent infringement believes in good faith that the Court's Claim Construction Ruling so requires, not later than 30 days after service by

Finally, while it would have been wrong, as Epocal suggests, for Abbott to continue to litigate this case after it knew its claims could not succeed,[26] there is no indication that Abbott ever had any such knowledge.  To the contrary, as discussed, above, Abbott was entitled to rely upon this court's denial of Epocal's motions for summary judgment and judgment as a matter of law in deciding to proceed with this litigation.

### d.    Shifting infringement theories

The court also is not persuaded that the changes in Abbott's infringement theories as the case progressed constituted litigation misconduct.  Epocal has cited some authority for finding litigation misconduct when a party repeatedly makes shifting, *meritless* arguments.  *See, e.g., Takeda Chemical Industries, Ltd. v. Mylan Laboratories, Inc.,* 459 F. Supp. 2d 227, 240-41 (S.D. N.Y. 2006); *Cartner v. Alamo Group, Inc.,* No. 1:7 CR 01589, 2011 WL 4457665, at *3-4 (N.D. Ohio Sept. 23, 2011).  But here, Abbott's evolving infringement theories were found to have at least colorable merit at various stages in the litigation, including:  when the court denied Epocal's motion for summary judgment; when the court denied Epocal's motions for

___

the Court of its Claim Construction Ruling, that party may serve 'Final Infringement Contentions' without leave of court that amend its 'Preliminary Infringement Contentions' with respect to the information required by Patent R. 3-1(c) and (d).").

[26] *See* doc. no. 333, at 21-22 (citing *Phonometrics, Inc. v. ITT Sheraton Corp.,* 64 F. App'x 219, 221 (Fed. Cir. 2003) (holding that it was not clearly erroneous for the district court to find the case "exceptional" when the plaintiff "continued to litigate the case even after it knew that it could not prevail on the merits").

judgment as a matter of law at the close of plaintiff's case-in-chief, and again at the close of all of the evidence; and when, during discovery, this court denied Epocal's motion to strike Dr. Tusa's supplemental expert report.[27]  Moreover, Epocal raised in its *Daubert* motion some challenges to Dr. Tusa's testimony due to the alleged shift in his theories, but the court rejected those challenges and found Dr. Tusa's testimony sufficiently reliable to be presented to the jury.  Epocal remained free to cross-examine Dr. Tusa and other Abbott witnesses regarding Abbott's changing infringement theories, and, in fact, Epocal did so during trial.  Thus, there is no evidence supporting Epocal's argument that Abbott's changing theories should be considered litigation misconduct.

> ### e.  Arguments at trial that were inconsistent with the court's claim construction

Epocal asserts that "Abbott pressed at least two arguments at trial that blatantly ignored this Court's claim construction ruling."[28]  Specifically, Epocal asserts that Abott improperly advanced an argument that the plastic walls of the Epocal device were "distinguished from the conduit" because they were located over a heat source, and that Abbott ignored the claim limitations "compartment" and "holds dissolved

---

[27] *See* doc. no. 144.

[28] Doc. no. 342, at 6 n.3.

gases" as separate requirements.[29]  The only case cited by Epocal to support that argument, *Cartner v. Alamo Group, Inc.,* No. 1:07-cv-1589, 2011 WL 4436652 (N.D. Ohio Mar. 30, 2011), is distinguishable because it was decided under a different standard.  In *Cartner,* the district court held that the plaintiffs' allegations of infringement were frivolous because the plaintiffs unreasonably ignored certain of the court's claim constructions and unreasonably maintained certain other claim constructions that had been rejected by the court.  *Id.* at *15.  As such, the plaintiffs "knew or should have known that these arguments were baseless," and there was clear and convincing evidence of bad faith.  Thus, the court in *Cartner* was addressing whether the plaintiff had brought and advanced objectively meritless litigation in subjective bad faith, not whether the plaintiffs had engaged in litigation misconduct.  Moreover, regardless of that distinction, Epocal has not presented clear and convincing evidence of litigation misconduct in this regard.  The jury was capable of determining for itself whether the evidence presented was consistent with this court's claim construction rulings.

### f.    Abandonment of claims and theories during litigation

Finally, the court is not convinced that Abbott's decision to abandon certain claims and theories at various points during the litigation constitutes litigation

---

[29] *Id.*

20

misconduct.[30]   The court acknowledges that asserting baseless theories and then dropping then at some later strategic point in the litigation is one factor that can be considered in evaluating a party's litigation misconduct, but usually only if there is some additional evidence that those decisions were part of a larger strategy of vexatious litigation.  *See, e.g., Beckman Industries,* 892 F.2d at 1551-52 (finding of litigation misconduct based on party's  decision to drop two claims during the litigation, *in addition to* evidence that another claim was meritless and that the party had repeatedly violated an injunction).  Indeed, the Federal Circuit has recently made clear that "[a] decision by a party to narrow its case for presentation to a jury does not generally suggest manipulation of the litigation process." *Medtronic,* 603 F.3d at 959. *See also Q-Pharma*, 360 F.3d at 1304 ("[W]e fail to see how a changed legal theory that leads to the voluntary dismissal of a lawsuit can amount to bad faith litigation.").

There is no evidence of special circumstances in this case to warrant a finding of litigation misconduct on the basis of Abbott's narrowing of claims for trial.  Abbott asserts that it decided to drop its willfulness and doctrine of equivalents theories because the court's pretrial rulings indicated that Epocal would be allowed to present certain unfavorable evidence only if those theories remained at issue.  That is a

---

[30] For example, Abbott decided, prior to the pretrial conference, not to pursue any claims for infringement of the '455 patent.  It also dropped its claims for willful infringement and infringement under the doctrine of equivalents before trial.  During trial, it dismissed certain aspects of its tortious interference claim.

legitimate strategic decision, not litigation misconduct.   Epocal also points to Abbott's decision not to pursue its claim for infringement of the '455 patent, but Epocal has already agreed not to pursue a claim for fees with regard to the '455 patent,[31] and the court approved that agreement.[32]   Finally, Epocal points to Abbott's decision to abandon certain portions of its tortious interference claim before that claim went to the jury, but Abbott's behavior with regard to that state law claim has no bearing on Epocal's entitlement to attorneys' fees pursuant to § 285, which applies only to patent infringement claims.  *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983) (holding that "an award of attorney fees for the breach of warranty claim is not authorized under § 285").  Epocal acknowledges as much by seeking fees related to the tortious interference claim pursuant to the court's inherent authority, not § 285.[33]

### g.    Totality of the circumstances

Even considering the totality of all the circumstances, including all of the specific arguments addressed above, the court concludes that Epocal has not presented clear and convincing evidence of Abbott's litigation misconduct to warrant a finding of "exceptional circumstances" under § 285.  Some of Epocal's arguments

---

[31] Doc. no. 224 ¶ 2.

[32] Doc. no. 226.

[33] *See* § I(B), *infra.*

concern issues that have been already been presented to the court, either on summary judgment, in *Daubert* motions, or in motions *in limine*, but the court never prevented Abbott from presenting evidence based on Epocal's objections.  Many of Epocal's other arguments are essentially another way of asserting that Abbott's claims were objectively baseless, and those arguments are foreclosed by this court's prior rulings. Abbott vigorously litigated its claims for patent infringement, and it no doubt made certain decisions during the course of the litigation that had as much or more to do with strategy than the merits of the claims.  But neither that, nor the fact that Abbott ultimately was unsuccessful in convincing the jury that Epocal infringed its patents, means that Abbott engaged in "litigation misconduct," as that term is used by courts applying the "exceptional circumstances" standard of § 285.  Generally, the cases finding litigation misconduct have involved much more serious misbehavior than what is alleged here, like repeated misrepresentations to the court or to the opposing party, the withholding of important testimony or documentation, or the advancement of clearly frivolous theories.  *See, e.g., MarcTec,* 664 F.3d at 919-20 (holding that the plaintiff "engaged in litigation misconduct when it: (1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability"), *Eon-Net LP v. Flagstar Bancorp,* 653 F.3d 1314, 1324 (Fed. Cir.

23

2011) (finding litigation misconduct when the offending party destroyed relevant documents, failed to offer a construction for any disputed claim terms, lodged incomplete and misleading extrinsic evidence with the court, submitted declarations that contradicted earlier deposition testimony by the declarants, and generally displayed a "lack of regard for the judicial system"); *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1380 (Fed. Cir. 2009) (upholding a finding of litigation misconduct against a party who had "made 'multiple, repeated misrepresentations . . . to the Court regarding its own patents in an effort to conceal what are now characterized as errors'").  Here, Abbott's case ultimately proved to be a weak one, but it was not a meritless one.  Abbott may not have made defending the case *easy* for Epocal, but there is no evidence that Epocal's defense was rendered impossible, or even unfairly complicated, by Abbott's alleged misrepresentations or concealment.

In summary, the court simply cannot hold that Abbott engaged in litigation misconduct.  Therefore, there is no basis for finding "exceptional circumstances" under 35 U.S.C. § 285, and Epocal is not entitled to recover attorneys' fees under that statute.

## B.    Inherent Authority

Epocal also seeks an award of expert witness fees and fees related to Abbott's

tortious interference claim pursuant to the court's inherent authority to award such

fees.[34]  The Eleventh Circuit has held that

> [t]he key to unlocking a court's inherent power is a finding of bad faith. *See In re Mroz*, 65 F.3d 1567, 1575 (11th Cir.1995).  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent.  A party also demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Primus Automotive Fin. Servs., Inc. v. Batarse,* 115 F.3d 644, 649 (9th Cir. 1997) (internal quotation and citation omitted).

*Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (alteration supplied).

> An attorney who knowingly or recklessly pursues a frivolous claim acts in bad faith.  *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003).  Knowingly and recklessly filing a complaint without investigating the law or facts, particularly in light of opposing party's warning that the facts do not support a claim, may support a showing of bad faith.  *Smith v. Grand Bank & Trust of Fla.*, [193 F. App'x 833] (11th Cir. 2006).

*Fowler v. Merrill Lynch Credit Corp.*, No. Civ.A. 1:00CV1641GET, 2006 WL

2224019, *3 (N.D. Ga. Aug. 2, 2006) (alteration supplied).

The Federal Circuit has also shed light on the interplay between § 285 fees for

"exceptional circumstances" and fees awarded pursuant to a court's inherent

authority.[35]  In *MarcTec*, the Federal Circuit held that

---

[34] Epocal resorts to the court's inherent authority for these fees because expert witness fees and fees related to non-patent claims are unavailable under § 285.

[35] Epocal correctly points out that, because the court's inherent authority does not arise out of § 285, the court is not limited to the requirements of that statute and the case law construing it when deciding whether to award fees pursuant to its inherent authority, and the Federal Circuit does

A district court has inherent authority "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). Use of this inherent authority is reserved for cases where the district court makes a "finding of fraud or bad faith whereby the 'very temple of justice has been defiled.'" *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed.2d 27 (1991)). Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power. *Id.*

*MarcTec,* 664 F.3d at 921. The Federal Circuit similarly emphasized the "narrow view of the role of inherent authority as a basis for imposing sanctions for misconduct" in *Medtronic*, stating that "a case must be 'sufficiently beyond "exceptional" within the meaning of section 285 to justify . . . a sanction under the court's inherent power.'" *Medtronic*, 603 F.3d at 966 (citations omitted) (ellipses in original).

Based on this authority from the Eleventh and Federal Circuits, it would be inconsistent to impose attorneys' or expert witness fees under the court's inherent authority when the court already has determined that Epocal is not entitled to fees under the "exceptional case" standard of § 285. There is no evidence here to support a finding of the extraordinary level of bad faith behavior that would be required to

not necessarily provide the controlling authority. That does not mean, however, that Federal Circuit cases cannot be helpful in the analysis, particularly in assessing the interplay between the statute and the court's inherent power.

support an award of attorney's fees under the court's inherent authority.

## II. CONCLUSION AND ORDER

Based on the foregoing, Epocal's motion for a finding that this case is exceptional and for an award of attorney's fees is DENIED.

**DONE** and **ORDERED** this 5th day of November, 2012.

_____
United States District Judge