UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ABBOTT POINT OF CARE, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Civil Action No. CV-08-S-543-NE |
| EPOCAL, INC., | ) ) ) |
| Defendant. | ) |

### MEMORANDUM OPINION AND ORDER

This opinion addresses the objections asserted by plaintiff, Abbott Point of Care, Inc. ("Abbott"), to the Bill of Costs submitted by defendant, Epocal, Inc. ("Epocal").[1] Upon consideration of the Bill of Costs, Abbott's objections, and Epocal's reply, the court concludes that Epocal is entitled to recover only a portion of the costs it requests: specifically, the amount of $166,680.40.

### I. PROCEDURAL BACKGROUND

Abbott's complaint originally asserted that Epocal infringed four of its patents, and that Epocal tortiously interfered with the employment contracts of some of Abbott's former employees.[2] However, on March 15, 2012, Abbott and Epocal

---

[1] Epocal's original Bill of Costs is attached as an exhibit to doc. no. 336. Abbott's objections to Epocal's Bill of Costs can be found at doc. no. 344. Epocal submitted a revised Bill of Costs as Exhibit A to doc. no. 346.

[2] *See* doc. no. 1 (Complaint).

entered into a stipulation to dismiss Count I of Abbott's complaint, which asserted infringement of U.S. Patent No. 5,112,455 ("the '455 patent").[3] The court approved that stipulation and entered an order on March 16, 2012, dismissing Count One with prejudice. The order also provided that each party would "bear its own fees and costs related to the litigation of Count I."[4]

On May 10, 2012, following the trial of this case, the jury returned a verdict finding that Epocal did not infringe any of the claims of the patents owned by Abbott, and that Epocal did not tortiously interfere with the employment contracts of any of Abbott's former employees.[5] That verdict represented a fully favorable decision for Epocal, and it was entered as the judgment of this court on May 18, 2012.[6] The judgment provided that all costs of the litigation were taxed to Abbott.[7]

On June 7, Epocal filed a request for costs pursuant to Federal Rule of Civil Procedure 54(d),[8] as well as a brief and evidence in support of its request.[9] Abbott filed objections to Epocal's request on June 28, 2012.[10] Epocal revised its bill of

---

[3] Doc. no. 224.
[4] Doc. no. 226, at 1.
[5] *See* doc. no. 326 (Jury Verdict Form).
[6] Doc. no. 329.
[7] *Id.* at 1.
[8] Doc. no. 337.
[9] Doc. no. 336.
[10] Doc. no. 344.

costs and filed a reply to Abbott's objections on July 12, 2012.[11]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides, in pertinent part, that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs — other than attorney's fees — should be allowed to the prevailing party." Fed. R. Civ. P. 54(b)(1) (alteration supplied). The district court's discretion to award costs is limited to those costs enumerated in 28 U.S.C. § 1920, including:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. *See also Summit Technology, Inc. v. Nidek Co.,* 435 F.3d 1371, 1374 (Fed. Cir. 2006).

## III. DISCUSSION

---

[11] Doc. no. 346.

In its revised Bill of Costs, Epocal asks this court to tax the following items of expenses to Abbott:

1. Clerk fees in the amount of $400;

2. Pre-trial transcripts in the amount of $1,048;

3. Copies in the amount of $59,560;

4. Witness fees in the amount of $13,710;

5. E-Discovery database charges (through discovery) in the amount of $175,390;

6. E-Discovery database charges (through trial) in the amount of $165,108;

7. Photocopier rental in the amount of $4,673;

8. Document conversion costs in the amount of $73,550;

9. Daily trial transcript costs in the amount of $13,091;

10. Deposition transcript costs in the amount of $37,161; and

11. Fees of the court-appointed Special Master in the amount of $6,657.[12]

The total of the amounts sought by Epocal is $550,348. Abbott does not dispute that Epocal, as the prevailing party in this litigation, is entitled to recover costs, but it does object to certain of the items requested by Epocal.[13]

---

[12] *See* doc. no. 346, at 2 & Exhibit A (revised Bill of Costs).

[13] Doc. no. 344, at 1 ("As the prevailing party in this litigation, Epocal is entitled to costs to the extent permitted by statute. Abbott does not dispute this, but does object to certain overreaching aspects of Epocal's Bill of Costs.").

**A.     Agreed Items**

Abbott agrees that Epocal is entitled to recover items 1-4 and 11 listed above.[14] The other items remain disputed, and are addressed below.

**B.     E-Discovery Costs**

Epocal requests $473,068 pursuant to 28 U.S.C. § 1920(4) for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." That amount represents $59,560 for photocopies and $414,048 for creation and maintenance of an e-discovery database. As mentioned above, Abbott has agreed to the taxation of $59,560 in copying fees (item 3). The remaining $414,048 can be divided into: $175,390 in e-discovery database charges through discovery (item 5); $165,108 in e-discovery database charges through trial (item 6); and $73,550 in document conversion costs (item 8).

**1.     Electronic database**

Abbott objects to Epocal's recovery of *any* costs for the creation and maintenance of an electronic discovery database under § 1920(4). Unfortunately, the Eleventh Circuit has not provided any clear guidance on this issue.[15]

---

[14] *See* doc. no. 344 (Abbott's objections); Transcript of October 23, 2012 oral argument, at 3, 12.

[15] The Federal Circuit applies regional Circuit law when interpreting § 1920. *In re Ricoh Co., Ltd. Patent Litigation*, 661 F.3d 1361, 1364 (Fed. Cir. 2011) ("We apply regional circuit law, in this case Ninth Circuit law, in interpreting section 1920.") (citing *Summit Technologies, Inc. v. Nidek Co.*, 435 F.3d 1371, 1374 (Fed. Cir. 2006)). Thus, the relevant body of appellate law is that of the

To support its argument, Abbott relies primarily on the Third Circuit's decision in *Race Tires America, Inc. v. Hoosier Racing Tire Corporation,* 674 F.3d 158 (3d Cir. 2012). There, the two parties in a piece of complex litigation both retained separate vendors to assist with the production of electronically stored information ("ESI"). *Id.* at 161. The tasks performed by the parties' vendors included:

> (1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ("OCR") conversion; and (7) conversion of racing videos from VHS format to DVD format.

*Id.* at 161-62. The issue on appeal before the Third Circuit was

> whether all charges imposed by electronic discovery vendors to assist in the collection, processing, and production of electronically stored information ("ESI") are taxable against a losing party as "[f]ees for exemplification [or] the costs of making copies of any materials where the copies are necessarily obtained for use in the case."

*Id.* at 159 (quoting 28 U.S.C. § 1920(4)) (alterations in original).

The Third Circuit emphasized that the determination of whether a particular cost can be awarded pursuant to §1920 is purely a matter of statutory construction. *Id.* at 164. As such, all of the expenses sought had to be either for "exemplification" or "making copies." *Id.* 165. None of the expenses sought involved "exemplification" because they were not costs associated with "produc[ing] illustrative evidence or the

---

Eleventh Circuit, not the Federal Circuit, even though this is a patent infringement case.

authentication of public records." *Race Tires America,* 674 F.3d at 166 (alteration supplied). Moreover, only the scanning of files to create digital duplicates, the conversion of files to the agreed-upon format for production, and the transfer of VHS recordings to DVD format qualified as "making copies" under the Third Circuit's interpretation of the statute. *Id.* at 167. Thus, only costs associated with those tasks were taxable. *Id.*

The Third Circuit refused to give any weight to equitable considerations, including the importance of database services to the ultimate act of production, the technical skill required to create a database, and the "efficiencies and cost savings resulting from the efforts of electronic discovery consultants." *Id.* at 168-69. Indeed, the Third Circuit harshly criticized other courts for taking such matters into consideration, characterizing their decisions as "untethered from the statutory mooring" of § 1920. *Id.* at 169. As the Third Circuit succinctly stated,

> Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.

*Race Tires America,* 674 F.3d at 169. The Court also refused to allow costs for any of the steps that might lead up to the actual copying of documents or other materials,

including "gathering, preserving, processing, searching, culling, and extracting" discoverable information. *Id.* at 170.

Since the Third Circuit handed down its *Race Tires America* decision in March of this year, almost all district courts considering the issue, including district courts within the Eleventh Circuit, have held that the costs of creating and maintaining an electronic discovery database are not recoverable under § 1920, except insofar as the costs involve scanning documents or converting documents to an agreed-upon format, such as tagged image file format ("TIFF"). *See, e.g., Finnerty v. Stiefel Laboratories, Inc.,* — F. Supp. 2d — , 2012 WL 4933863, at * 2-5 (S.D. Fla. Oct. 16, 2012) (refusing to award the costs of an electronic database that was solely for the creating party's convenience); *Johnson v. Allstate Insurance Co.,* No. 07–cv–0781–SCW, 2012 WL 4936598, at *6 (S.D. Ill. Oct. 16, 2012) (slip opinion) (refusing to award costs for creation of litigation database, processing of ESI, extraction of metadata, deduplication, electronic data hosting, or preparation for production of ESI, but awarding costs for converting documents into a word-searchable format, and creation of TIFF images, hard copy productions, graphics, and deposition transcripts); *El Camino Resources, Ltd. v. Huntington National Bank*, No. 1:07–cv–598, 2012 WL 4808741, at *7 (W.D. Mich. May 3, 2012) (slip opinion) ("Under the *Race Tires America* approach, the only compensable costs are (a) the conversion of native digital

files to the agreed-upon production format and (b) the scanning of paper documents to create digital duplicates for production in discovery.").

In contrast, the cases cited by Epocal all pre-date the *Race Tires America* decision, and do not adhere to the strict construction of the statute required by the Third Circuit. *See, e.g., In re Ricoh Company Ltd. Patent Litigation,* 661 F.3d 1361, 1364-65 (Fed. Cir. 2011);[16] *In re Aspartame Antitrust Litigation,* 817 F. Supp. 2d 608, 615-16 (E.D. Pa. 2011); *In re Scientific-Atlanta, Inc. Securities Litigation,* No. 1:01-cv-1950-RWS, 2011 WL 2671296, at *1 (N.D. Ga. July 6, 2011); *Aguiar v. Natbony,* No. 09–60683–CIV, 2011 WL 4383224, at *5-6 (S.D. Fla. Apr. 15, 2011); *Chenault v. Dorel Industries, Inc.,* No. A-08-CV-354-SS, 2010 WL 3064007, at *4 (W.D. Tex. Aug. 2, 2010); *HSH Nordbank AG v. Swerdlow,* No. 08 Civ 6131 (DLC), 2010 WL 1141145, at *7 (S.D. N.Y. Mar. 24, 2010); *CBT Flint Partners, LLC v. Return Path,*

---

[16] The Third Circuit in *Race Tires America* explicitly distinguished the *In re Ricoh Patent Litigation* opinion from the Federal Circuit (which was applying Ninth Circuit law) "because the parties [in *Ricoh*] had agreed to the creation of a specific document review database by a specific vendor for document production purposes, unlike this case, where Hoosier and DMS retained their own electronic discovery consultants." *Race Tires America,* 674 F.3d at 171 n.11. Moreover, the Third Circuit in *Race Tires America* did not find the *In re Ricoh* case to be inconsistent with its ruling because *In re Ricoh* involved a database to store e-mails in native format as a platform for the parties to obtain documents. The Third Circuit had already "acknowledged that the costs of conversion to an agreed-upon production format are taxable as the functional equivalent of 'making copies.'" *Id.* Instead, it was "all the other activity, such as searching, culling, and deduplication, that are not taxable." *Id.* Because the *In re Ricoh* case "did not address the question of whether the activities undertaken by the electronic discovery vendors in this case are the equivalent of 'making copies,'" it afforded "no assistance" to the parties in the *Race Tires America* case. It also must be remembered that Federal Circuit opinions are not binding authority on the issue of awarding costs under § 1920. *See* note 15, *supra*.

*Inc.,* 676 F. Supp. 2d 1376, 1381 (N.D. Ga. 2009); *Lockheed Martin Idaho Technologies Co. v. Lockheed Martin Advanced Environmental Systems, Inc.,* No. CV-98-316, 2006 WL 2095876, at *2 (D. Idaho July 27, 2006).

The court is sympathetic to the practical arguments advanced by Epocal. In modern complex litigation, particularly patent litigation, the maintenance of an electronic database is a practical necessity, and, as a practical matter, the task of establishing and maintaining the database often must be delegated to an outside source that possesses the required technical expertise. Attorneys can no longer reasonably be expected to maintain thousands upon thousands of documents in paper form, and to manually process those documents during litigation. Any law firm that attempted to do so would soon find itself falling far behind its competition, as clients have come to expect the efficiency that modern technological conveniences provide. Unfortunately, however, the law does not always favor efficiency or practicality. Nevertheless, this court is persuaded by the thorough reasoning of the Third Circuit in *Race Tires America,* and by the weight of authority from other courts following that decision. Moreover, this court is constrained by the provisions of 28 U.S.C. § 1920 when determining the costs that may be awarded to a prevailing party, and the Third Circuit has offered a thorough, reasonable, and persuasive interpretation of that statute.

Under *Race Tires America,* Epocal will not be permitted to recover any costs for the maintenance of an electronic discovery database. It is therefore unnecessary to determine whether electronic database charges incurred prior to, and after, the close of discovery should be treated differently. Neither item 5 ($175,390 for e-discovery database charges through discovery) nor item 6 ($165,108 for e-discovery database charges through trial) will be allowed.

### 2. Document conversion costs

Epocal also requests $73,550 in fees for processing of electronic documents, including conversion of native files to "TIFF" format for production to Abbott; conversion of document[s] from "TIFF" format to a searchable format; importing and loading of documents to an electronic database; production of electronic documents; and the associated project and technical support.[17]

Abbott does not dispute Epocal's entitlement to recover costs for these tasks,[18] and they clearly are recoverable under *Race Tires America*. However, Abbott does dispute the $73,550 amount requested by Epocal. According to Abbott, that amount includes charges that are associated with the '455 patent, and Epocal agreed not to seek any costs or fees associated with the '455 patent. The court recognizes that, because all discovery on all of Abbott's patent infringement claims was conducted

---

[17] Doc. no. 336, at 13 (alteration supplied). *See also id.*, Exhibit A (Declaration of Daryl Wiesen) ¶¶ 20-21; *id.*, Exhibit B (Declaration of Stephen Hall) ¶¶ 8-9.

[18] *See* doc. no. 334, at 9 ("Of the $414,048 Epocal seeks in e-discovery costs, only $73,550 represents scanning and file conversion. . . . At most, this single category of e-discovery expense may be properly reimbursable under § 1920 . . . .").

at the same time, it would be practically impossible to precisely determine how much of the discovery costs are attributable solely to the '455 patent. Epocal recognizes that too, and has offered an estimate that one-third of all litigation costs are related to the '455 patent.[19] The court finds that estimate to be reasonable and, therefore, accepts that Epocal's document conversion costs should be reduced by one-third. Accordingly, Epocal will be entitled to recover $49,279 for document conversion costs (item 8).

## C. Photocopier Rental

Epocal claims $4,673 in expenses for rental of photocopy machines during trial. Epocal asserts that those expenses are recoverable as part of the expenses associated with making copies, to which Abbott already has agreed. Abbott objects, citing two cases from the Eleventh Circuit for the broad proposition that "equipment rental charges are not taxable."[20] *See Technical Resource Services, Inc. v. Dornier*

---

[19] *See* Wiesen Declaration ¶ 24 ("Epocal is not requesting costs for printing, copying, and scanning that relate solely to its defense of Epocal's claim of infringement of the '455 patent. However, there is no feasible way for Epocal to determine whether any particular copy, print, or scan related solely to the '455 patent. A reasonable estimate is that 1/3 of such costs was attributable solely to the '455 patent."). Abbott seems reluctant to explicitly agree to this allocation, but it also has not explicitly disagreed, and it has not offered an alternative solution. *See* doc. no. 344, at 10 ("Accepting for now Epocal's claim that one-third of its discovery expenditures pertained to the '455 patent, Epocal's request for e-discovery costs should likewise be reduced by one-third to reflect costs resulting solely from that patent. Therefore, to the extent the Court finds that scanning and file conversion costs are properly reimbursable to Epocal, Epocal's request for $73,550 for that category should be reduced by one-third, to $49,278.50.").

[20] Doc. no. 344, at 10.

*Medical Systems, Inc.,* 134 F.3d 1458, 1468 (11th Cir. 1998); *Morrison v. Reichhold Chemicals, Inc.,* 97 F.3d 460, 465-66 (11th Cir. 1996). The court does not find those cases to be supportive of Abbott's position. Both cases concerned taxing costs for rental of video equipment to play videotaped depositions at trial. Not only would those expenses fall under a different provision of § 1920 than copying costs, but they also were for a different purpose: *i.e.,* the presentation of evidence at trial, versus the production of photocopies. Abbott has presented no convincing argument or authority that expenses for the rental of photocopiers during trial should not be allowed as part of copying costs under 28 U.S.C. § 1920(4). Accordingly, Epocal will be awarded $4,673 in costs for photocopier rental (item 7).

**D.  Transcripts**

Epocal seeks a total amount of $51,450 in costs for printed and electronically stored transcripts, representing $13,091 for daily trial transcripts (item 9), $1,048 for transcripts of pre-trial hearings (item 2), and $37,311 for deposition transcripts (item 10). As mentioned above, Abbott agreed that Epocal is entitled to recover $1,048 for transcripts of pre-trial hearings. This section will discuss the remaining two categories of transcript costs.

**1.  Deposition transcripts**

Abbott does not dispute that Epocal is generally entitled to recover costs for

13

deposition transcripts under § 1920(2),[21] but it does dispute that Epocal is entitled to the full $37,311 amount requested. As an initial matter, Epocal has agreed to reduce its request by the $150 amount that is attributable to fees for condensed transcripts.[22] Abbott also seeks to reduce by one-third the charges associated with all depositions in which the deponent discussed the '455 patent. As discussed above, the court agrees that this is a reasonable solution for the allocation of costs associated with the '455 patent, which the parties have agreed are not recoverable. The court disagrees slightly with Abbott's calculation, however. Abbott asserts that *all* of the $892.50 in costs associated with Imants Lauks' April 7, 2009 deposition should be excluded,[23] but the court concludes that the $892.50 amount should instead be reduced by one-third. Thus, Abbott asserts that $17,422.80 in deposition transcript expenses are attributable to the '455 patent.[24] That amount will be reduced by one-third, or $5,807.60. Abbott has not asserted that any other deposition transcript costs should be reduced. Accordingly, Epocal will be entitled to recover $31,353.40 for deposition

---

[21] *Id.* at 12 ("Costs for deposition transcripts are generally taxable as costs, so long as the transcripts were necessarily obtained for use in the case.") (citing *U.S. E.E.O.C. v. W & O, Inc.,* 213 F.3d 600, 621-22 (11th Cir. 2000)).

[22] Doc. no. 346, at 10 n.3 ("Abbott also objects to $150 for condensed transcript fees. Epocal has revised its Bill of Costs to remove a request for these fees.").

[23] *See* doc. no. 344, at 13.

[24] *See id.* at 13-14. Abbott identified $892.50 in costs for the transcript of Dr. Lauks' April 7, 2009 deposition and $16,530.30 in costs for transcripts of other depositions in which the '455 patent was discussed. Those two amounts total $17,422.80.

transcript costs.[25]

### 2. Daily trial transcripts

Epocal requests $13,091 for the costs of daily transcripts during trial. Abbott objects to recovery of those costs as not having been "necessarily obtained for use in the case." 28 U.S.C. § 1920(2).

The Eleventh Circuit has held that "the costs associated with expedited trial transcripts should [not] be allowed *as a matter of course*, lest litigation costs be unnecessarily increased . . . ." *Maris Distributing Co. v. Anheuser-Busch, Inc.*, 302 F.3d 1207, 1226 (11th Cir. 2002) (alteration supplied). Even so, the Eleventh Circuit will allow such costs if they are "necessary" in a given case, due to its "length and complexity." *Id.* Thus, the Eleventh Circuit has upheld an award of costs for daily trial transcripts when the transcripts were "necessary to the preparation of a defense, including witness examination, jury instructions, and closing arguments," as well as to preserve the court's oral rulings. *Id.* at 1225. Following that standard, courts have awarded costs when

> the trial lasted nearly four weeks, involved complex issues and expert testimony. . . . The parties used the transcript for preparing for direct and cross examination, mid-trial motions, and proposed Findings of Fact and Conclusions of Law, and the District Court used the transcript for making citations to the record and ruling on mid-trial rulings.

---

[25] That amount represents the original $37,311 requested by Epocal, minus $150 for condensed transcripts, minus $5,807.60 for transcript costs associated with the '455 patent.

*Sensormatic Electronics Corp. v. Tag Co. US*, No. 06–81105–CIV, 2009 WL 3208649, at *4 (S.D. Fla. Oct. 2, 2009).  On the other hand, courts have declined to award costs for expedited trial transcripts when the trial was "relatively short" (*i.e.,* six days), *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, No. 10–61532–CIV, 2011 WL 6138740, at *3 (S.D. Fla. Dec. 9, 2011), and when the party requesting the costs had sufficient staff present during the trial to take notes and anticipate legal arguments.  *Durden v. Citicorp Trust Bank, FSB*, No. 3:07–cv–974–J–34JRK, 2010 WL 2105921, at *3 (M.D. Fla. April 26, 2010).  *See also Pickett v. Tyson Fresh Meats, Inc.*, No. Civ. 96–A–1103–N, 2004 WL 3712721, at *4 (M.D. Ala. Aug. 3, 2004) (daily transcripts were a mere convenience, not a necessity, when "lead counsel for the defendant was assisted by numerous partners, associates, and paralegals who had ample opportunity to take notes").

Here, Epocal asserts that the daily trial transcripts were reasonably necessary to "(1) perform a close analysis of all witness testimony; (2) to prepare for examination of witnesses; and (3) in order to cite trial testimony in a Rule 50 motion and any post-trial motions[;] and (4) for use in closing arguments,"[26] as well as to adjust to shifting opinions, testimony, and theories at trial.[27]  While the expedited transcripts no doubt made performing those tasks more *convenient* for Epocal's

---

[26] Hall Declaration ¶ 6 (alteration supplied).

[27] *See* doc. no. 346, at 9-10.

counsel, there is no indication that they were *necessary* to the preparation of Epocal's case. The trial lasted seven days, including jury selection and deliberations. Most of the cases in which costs for daily trial transcripts have been allowed due to the "length" or "complexity" of the case have lasted several weeks. *Compare Sensormatic,* 2009 WL 3208649, at *4 (allowing daily transcript costs for a trial that lasted four weeks) *with Habersham,* 2011 WL 6138740, at *3 (refusing to award daily transcript costs for a "relatively short" trial that lasted six days). Moreover, while this case was more complicated than others this court is accustomed to seeing on its docket, there is no indication that it is more complicated than the *average patent infringement case*. Finally, Epocal staffed this trial well. There were multiple attorneys and litigation support personnel in the courtroom each day of trial. Any of those individuals could have taken, and likely did take, notes in order to anticipate cross examination questions and legal arguments. The trial transcript undoubtedly was more complete than any notes a non-court reporter could have taken, but that does not mean that the daily transcripts were "necessary."

In summary, Epocal will not be allowed to recover $13,091 for daily trial transcripts (item 9).

## IV. CONCLUSION AND ORDER

In accordance with the foregoing, Epocal will not be permitted to recover any

17

costs for the creation and maintenance of electronic discovery databases or daily trial transcripts. However, Epocal will be allowed to recover the following items of costs:

1. Clerk fees in the amount of $400;

2. Pre-Trial Transcripts in the amount of $1,048;

3. Copies in the amount of $59,560;

4. Witness fees in the amount of $13,710;

5. Photocopier rental in the amount of $4,673;

6. Document conversion costs in the amount of $49,279;

7. Deposition transcript costs in the amount of $31,353.40; and

8. Fees of the court-appointed Special Master in the amount of $6,657.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Epocal is awarded costs in the amount of One Hundred Sixty-Six Thousand Six Hundred Eighty and 40/100ths Dollars ($166,680.40). The Clerk of Court is directed to tax costs in that amount.

**DONE** and **ORDERED** this 5th day of November, 2012.

_____
United States District Judge